White, J.
The original action was instituted in the Court of Common Pleas of Hardin county, to recover one hundred acres of land, being survey number 12,097 in the Yirginia Military Bistrict. The petition was filed under section 558 of the code of civil procedure. S. & C. 3119.
The answer in the first defense denied the title, of the plaintiffs. The answer also set up the statute of limitations and several other defenses, which need not be specially noticed as the questions thus sought to be presented, all properly arose on the triaPunder the general denial of title in the plaintiffs. Kyser v. Cannon, 29 Ohio St. 359 ; Winter *392 mute v. Montgomery, 11 Id. 444 ; Treon’s Lessee v. Emerick, 6 Ohio, 392.
Ou the trial, the defendant introduced in evidence the record of a suit in chancery, had in the Court of Common Ideas of Hardin county, in which there was set off and decreed to the present defendant, by metes and bounds, one-third of the land in controversy. The bill, in that case, was filed on the 1st day of March, 1853, by the present •defendant, against Cadwallader Wallace and others. The bill set out that the complainant (the present defendant) had acquired, by purchase and assignment, all the right, title, interest, and claim of Wallace for locating and entering the land in controversy; and that such location, entry, .and survey had been made by said Wallace for and on behalf of Cornelius Beazley, to whom the warrant located on .said land was issued.
It was alleged in the bill that the complainant did “ not know the place of residence of the said Cornelius Beazley, if living, or, if dead, the names or places of residence of his legal representatives or heirs; but that one Jacob Rhodes, of Pike county, Missouri, claims some interest therein.”
The prayer of the bill was “ that the said Cadwallader Wallace, Jacob Rhodes, the said Cornelius Beazley, if living, but, if dead, that his heirs and legal representatives may be made defendants to this bill, and that the said defendants may be required to answer all and singular the matters and things herein set forth, and that an order of publication of notice may be made for that purpose, and that, on final hearing of this case, the court may set off' to your petitioner one-third of said land, by metes and bounds, or such other proportion as they may consider equitable and just in the premises, and decree conveyance thereof to your petitioner, and that they may grant such other and further relief as is equitable and just in the premises.”
An affidavit of the complainant was annexed to the bill, in which he stated that he did “ not know the names or place of residence of the heirs of Cornelius Beazley, de *393 ■ceased, as set forth in the above bill, unless the said Rhodes he one of them.”
It appears from the record that notice of the pendency of the petition, containing a summary statement of the ■object and prayer thereof, was published six consecutive weeks in the “ Nor.-Wester,” a newspaper printed in the county.
At the June term, 1853, the court found that such notice had been published for six consecutive weeks next preceding the term.
At the October term, 1853, a decree was rendered for the ■complainant, and a partition was ordered as prayed for in the bill.
The commissioners appointed to make partition having made a report setting off to the complainant one-third of the land by metes and bounds, the court, at the March ■term, 1854, confirmed the report, and decreed that the defendants should convey to the complainant, by deed in fee ■simple, the lands set off to him by the commissioners, and provided, in the decree, that, in default of the execution of ¡such deeds by the defendants, the decree should operate as such conveyance.
This decree is alleged to be void on two grounds — (1) that the court had no jurisdiction of the subject-matter ¡stated in the bill ; nor (2) of the persons of the defendants. Neither of these positions, in our opinion, is tenable.
The plaintiffs claim as the heirs of Cornelius Beazley, who was a resident of the State of Missouri at the time of 'his death, which occurred prior to the filing of the bill. The bill was founded on the claim of Wallace, as locator of the laud ; and such a claim, in the "Virginia Military District, is understood to signify the compensation of the portion of the land located, agreed to be given by the owner of the warrant to the locator of it for his services. Hollingsworth v. Barbour, 4 Pet. 473. The fact that the patent was not issued until after the rendition of the decree is of no materiality. Beazley and his heirs held the equitable title to the land, subject to the claim of the locator; aud, on *394 the emanation of the patent, it inured to the benefit of thecomplainaut as to the portion of the land allotted to him under the decree. Matthews v. Rector, 24 Ohio St. 439.
As to the jurisdiction of the persons of the defendants. The chancery act of 1831 (3 Chase, 1696), section 10, provides that, “in cases where it shall be necessary to make the heirs of any decedent defendants, and the names of all, or any part of them, are unknown, and the complainant annexes to his petition an affidavit of his want of knowledge of the names or residence of such heirs, proceedings may be had against them, without naming them, and the court shall make such order in relation to notice as they may deem proper.” The act of March 12, 1845, extends the same provision to devisees. 2 Curwen, 1181.
The prayer of the bill asked that an order might be made for the publication of notice to the defendants; but the record does not show the making of such order, except as it may be implied from the finding that the notice had been given by publication as before stated. It appears,, however, from this finding, that the court was satisfied with the mode in which notice had been given and adopted it. This was, in effect, equivalent to a notice given in pursuance of the previous direction of the court; at least, it ought to be so regarded when questioned in a collateral proceeding.
The defendant also set up title to the entire tract under a tax sale made under the act of March 23, 1840. 1 Cur-wen, 630.
In support of this claim, he introduced in evidence the-deed of the auditor of the county, without any other evidence that the provisions of the statute authorizing the sale had been complied with. In lieu of such evidence, it was proved that the records in the office of the county auditor, relating to the sale, had been destroyed by fire. The deed was dated December 15, 1853, and recited a sale of the land for taxes on the second Monday of January, 1851.
As to the effect of the deed, the court instructed the jury, in substance, that if they found, from the evidence, that *395 the records in the office of the auditor had been destroyed, without fault of the defendant, then they might presume-that the requirements of the statute, in making the sale, had been followed.
In this instruction, and in thus allowing the deed to be given in evidence, the court erred.
That a tax deed executed under the act in question is.' not, of itself, prima facie evidence of the validity of the sale, was decided in Jones v. Devore, 8 Ohio St. 430.
By section 27 of the act under which the sale was made, the auditor, after recording the delinquent list, is required to transmit it to the auditor of state. And, by section 34, the county auditor is required to make out and certify a copy of the record of sales and forward the same to the auditor of state.
• The first section of the. amendatory act of February 24, 1844 (2 Curwen, 1020), provided for the publication of the-delinquent list in a newspaper, for a specified time before the sale, and prescribed the notice that was to be attached to and published with the list.
No evidence was given to show a compliance with these provisions of the statute. The destruction of the records-in the office of the county auditor did not destroy the evidence to be found in the office of the auditor of state, and in the newspaper in which the delinquent list and notice-were published, if such publication was made. Nor was it shown that such evidence was not attainable.
The ruling of the court is sought to be sustained on the maxim, omnia presumuntur rite esse acta. This maxim is not of universal application; but it is not our intention now to enter into an examination of the cases in which it properly applies. It may be remarked, however, that it is-not to be extended so as to make it cover substantive, independent facts as distinguished from facts which are mere incidents of others duly established. 2 'Wharton’s Ev., § 1318; United States v. Ross, 92 U. S. (2 Otto) 282, 284, 285 ; Blackwell on Tax Titles, *72. See also Best on Presumptions, chap. 2, § 61.

Judgment reversed and cause remanded.