**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4938**

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

      v.

DANIEL NICHOLAS BUCZKOWSKI,

             Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of North Carolina, at New Bern.  James C. Fox, Senior
District Judge.  (5:08-cr-00159-F-1)

Argued:  September 20, 2011          Decided:  December 20, 2011

Before TRAXLER, Chief Judge, and AGEE and DIAZ, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished
per curiam opinion.

**ARGUED:** Eric Joseph Brignac, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Raleigh, North Carolina, for Appellant.   David A.
Bragdon, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North
Carolina, for Appellee.   **ON BRIEF:** Thomas P. McNamara, Federal
Public Defender, G. Alan DuBois, Assistant Federal Public
Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North
Carolina, for Appellant.   George E. B. Holding, United States
Attorney, Jennifer P. May-Parker, Kristine L. Fritz, Assistant
United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY,
Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Daniel Buczkowski was convicted of one count of possessing child pornography, see 18 U.S.C. § 2252(a)(4)(B), and twenty-seven counts of transportation of child pornography in interstate or foreign commerce, see 18 U.S.C. § 2252(a)(1). Buczkowski appeals, challenging the convictions and sentences imposed on the transportation counts only. While we find the government's evidence sufficient to establish that Buczkowski transported child pornography, that evidence established only a single act of transportation. Accordingly, we affirm the conviction and sentence on the first transportation count, vacate the remaining transportation convictions and sentences, and remand for resentencing.

I.

After retiring from the Army, Buczkowski went to work as a truck driver for Kellogg, Brown & Root ("KBR"), a military contractor. Buczkowski worked for KBR in Iraq from November 2004 through February 2006 and from December 10, 2006 through March 29, 2007. Buczkowski had a password-protected laptop computer that he used at home and took with him to Iraq. The evidence presented at trial established that when he was in Iraq, his computer was often in a shared lounge space and was sometimes used by people other than Buczkowski.

3

Buczkowski was injured on March 21, 2007.  He was sent to a clinic in Kuwait for medical evaluation, where it was determined that he should return to the United States for treatment. Buczkowski left from Kuwait, without returning to the base in Iraq, and arrived in Fayetteville, North Carolina, on March 29, 2007.  KBR later shipped Buczkowski's personal effects to him; the shipment arrived around the first week of May 2007.

On May 8, 2007, Buczkowski took his laptop to be repaired. While repairing the computer, the technician found child pornography on the computer and called the police.  Twenty-seven images qualifying as child pornography were found on the computer, all of which had been loaded onto the computer on January 4, 2007, when Buczkowski was in Iraq.  Buczkowski was indicted on one count of possession of child pornography and twenty-seven counts (one for each image) of transportation of child pornography.

A jury convicted Buczkowski of all counts.  The district court sentenced him to 240 months' imprisonment on the first transportation count, a consecutive 240 months' on the second transportation count, and concurrent sentences on the remaining transportation counts.

II.

Section 2252(a) prohibits "knowingly transport[ing] or ship[ping] [child pornography] using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means."  18 U.S.C. § 2252(a)(1).  At trial, the government sought to prove that Buczkowski transported the child pornography by bringing the computer with him when he returned from Iraq at the end of March.  Buczkowski contended that he had no knowledge the child pornography images were on his computer and that he did not bring the computer with him when he returned from Iraq.  On appeal, Buczkowski concedes the sufficiency of the evidence showing that he knowingly possessed the child pornography, but he argues that the government's evidence was insufficient to establish that he transported the pornography by bringing the laptop with him when he returned from Iraq.

When considering the sufficiency of the evidence supporting a criminal conviction, we must view "the evidence in the light most favorable to the government, assuming its credibility, and drawing all favorable inferences from it."  United States v. Penniegraft, 641 F.3d 566, 571 (4th Cir. 2011), petition for cert. filed, (U.S. Oct. 4, 2011) (No. 11-6757).  We must affirm the jury's verdict "if any rational trier of fact could have found the essential elements of the crime charged beyond a

5

reasonable doubt." Id. In our view, the government presented sufficient evidence, both direct and circumstantial, from which the jury could have rationally concluded that Buczkowski transported the computer.

The direct evidence came through the testimony of Erika Pennell, the niece of Buczkowski's wife. Pennell began living with the Buczkowskis when she was sixteen, and she and her young daughter were living with the Buczkowskis in March 2007 when Buczkowski returned from Iraq. Pennell and Buczkowski began a sexual relationship at some point, and the laptop contained pictures of them engaging in sexual acts. Some of the pictures of Pennell and Buczkowski were included in two photo collages found on the laptop (J.A. 188-89, 283-84); the collages also contained some of the child pornography images at issue in this case, as well as images of adult men and women engaged in sexual acts. The collages were created on January 8, 2007, and January 27, 2007, when Buczkowski was in Iraq. (J.A. 185-86)

On direct examination, the government asked Pennell if she was living in the house when Buczkowski returned in March 2007. Her answer was, "Yes, I was." (J.A. 282) The government then asked, "And did he bring this laptop computer with him?" Her answer was an unqualified, "Yes, he did." (J.A. 282) Pennell's testimony, standing alone, would thus seem to be sufficient to establish that Buczkowski transported the laptop. Buczkowski,

6

however, argues that his cross-examination of Pennell "clarified" that testimony and established that she did not see the computer until May, when the KBR shipment arrived.

Buczkowski points to the following exchange between his attorney and Pennell as providing the "clarification" of Pennell's testimony:

> Q. Now, you said he brought his computer back with him?
> A. Yes.
>
> Q. And did you see the bag it came in?
> A. No, I saw the computer.
>
> Q. And he was using it while he was there at the end of March?
> A. No, he plugged it into the Internet and it crashed, it wouldn't even come up.
>
> Q. So, when did you see him using it?
> A. I didn't say I saw him using it, I said I saw the computer.
>
> Q. Was it in April you saw it? Was it in May you saw it?
> A. I saw it when he came back. He was with it sitting in the chair in the living room hooking it up to the Internet and when he hooked it up, it started to do some kind of -- type of download and it crashed. He could not even turn it on.
>
> Q. Was it the same day he came in?
> A. I don't know.

(J.A. 297) Because Buczkowski took the laptop for repair in early May, Buczkowski argues that Pennell's testimony, "taken in context," Brief of Appellant at 22, establishes that Pennell did

not see the laptop until May, after the KBR shipment arrived. We disagree.

Buczkowski's claim is dependent on several unstated assumptions -- that the only time Pennell saw the computer was when Buczkowski discovered the problem with the computer; that Buczkowski discovered the problem as soon as he received the computer; and that he took the computer to be repaired as soon as it crashed. The evidence presented at trial, however, did not compel the jury to reach those conclusions. The jury could reasonably have concluded that Buczkowski tried to use the laptop as soon as he got home in March and that it crashed then, but that, because there were other computers in the house (along with a thumb drive containing adult pornography), Buczkowski did not get around to taking it to be repaired until May. While the testimony of Buczkowski's wife largely supported the timeline that Buczkowski urges on appeal, the jury was not required to credit her testimony over Pennell's. See United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) ("[I]f the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." (internal quotation marks omitted)).

Pennell's personal history, as brought out on cross-examination, gave the jury ample reason to question her credibility, and the cross-examination about when she saw the

computer may well have cast doubt on the certainty she expressed on direct examination. The fact remains, however, that Pennell testified that Buczkowski had the laptop when he returned home in March, and, as a reviewing court, we are not at liberty to ignore or recast her testimony. "A fundamental premise of our criminal trial system is that the jury is the lie detector," United States v. Scheffer, 523 U.S. 303, 313 (1998) (internal quotation marks omitted), and it is "the unique province of the jury to sift through conflicting evidence, assess the credibility of the witnesses, and find facts," United States v. Thomas, 467 F.3d 49, 55 (1st Cir. 2006). Thus, when considering the sufficiency of the evidence supporting a criminal conviction, this court must assume that the jury found the government's witnesses credible, and we "must assume that the jury resolved all contradictions in testimony in favor of the [g]overnment." Penniegraft, 641 F.3d at 572 (internal quotation marks omitted). Given this strict standard of review, we simply cannot accept Buczkowski's contention that Pennell's testimony was insufficient to establish that he transported the laptop by bringing it from Iraq to the United States.

Moreover, even without Pennell's testimony, the record contains sufficient circumstantial evidence to support the determination that Buczkowski transported the laptop. See United States v. Martin, 523 F.3d 281, 289 (4th Cir. 2008) ("As

9

we have observed repeatedly, circumstantial evidence is not inherently less valuable or less probative than direct evidence and may alone support a guilty verdict." (internal quotation marks omitted)).

The evidence established that most of the child pornography images were last accessed and viewed on the laptop on March 25, 2007 (J.A. 184), when Buczkowski was in Kuwait for evaluation of his injury. (One image was last accessed on a date in May 2007 when the laptop was being repaired.) (J.A. 154-55) Buczkowski's laptop was password-protected, and the password had to be entered as soon as the computer was turned on. (J.A. 182) While there was evidence that Buczkowski let others use his laptop while he was in Iraq, the evidence did not establish that Buczkowski actually shared his password with others. Instead, the evidence suggested that others used the laptop after Buczkowski had logged on. (J.A. 476-77) Moreover, the child pornography images and the pictures of Buczkowski engaging in sexual acts with Pennell were located on the computer in a folder that required a different password to gain access. (J.A. 180-81, 188-89) Given the presence of the Pennell pictures, the jury could reasonably have concluded that, even if Buczkowski had shared his log-on password, he would not have shared the password for the image folder; that only Buczkowski knew the passwords for both the computer and the image folder; and that

10

it therefore was Buczkowski who turned on the computer and viewed the images on March 25. Because Buczkowski was in Kuwait on March 25 and did not return to base in Iraq before flying back to the United States, this evidence supports the conclusion that Buczkowski brought the laptop with him when he returned home on March 27.

The evidence about the availability of medical treatment in Iraq likewise lends support to the government's view that Buczkowski had the computer with him when he returned to the United States. The base where Buczkowski was stationed had limited ability to provide medical care. Employees with medical issues that could not be treated on-base were sent to medical clinics in Kuwait or Dubai, which required travel from the base to the Green Zone in Baghdad, from the Green Zone to the Baghdad airport, and from the airport to Kuwait or Dubai. As the facts of this case establish, the process of getting treatment could take several days: Buczkowski was injured on March 21; arrived in Baghdad from the KBR base on March 23; left Baghdad for Kuwait on March 24; was seen at the clinic in Kuwait on March 26; and departed Kuwait on March 28. The KBR travel request form prepared in connection with Buczkowski's injury showed that he would spend one night in Baghdad before leaving for Kuwait (J.A. 393-94), and the jury could reasonably have concluded that Buczkowski would have known the travel-and-treatment process was

11

a long and drawn out one, thus making it more likely that Buczkowski would have taken his computer with him to have something to pass the time.

Finally, Buczkowski's wife testified that Buczkowski took his military backpack when he <u>left</u> for Iraq and that the computer was in the backpack. (J.A. 409) Her testimony therefore established that the computer fit in the backpack, and the jury could reasonably have concluded that the laptop was in the backpack on the return trip and that Mrs. Buczkowski perhaps did not see it.

Accordingly, after considering the record as a whole in the light most favorable to the government and giving the government the benefit of all inferences that reasonably can be drawn from that evidence, we conclude that the evidence was sufficient to support the jury's determination that Buczkowski transported child pornography.

III.

As noted above, Buczkowski was indicted on and convicted of twenty-seven counts of transportation of child pornography -- one count for each image. The district court imposed sentences of 240 months' imprisonment for the first transportation conviction, a consecutive 240 months' imprisonment for the second conviction, and concurrent 240-month sentences for each

12

of the remaining transportation convictions. On appeal, Buczkowski contends that the indictment was multiplicitous because it split the single prohibited act of transporting child pornography into twenty-seven separate offenses, one for each image on the laptop. See United States v. Colton, 231 F.3d 890, 908 (4th Cir. 2000) ("Multiplicity involves charging a single offense in more than one count in an indictment." (internal quotation marks omitted)). Because the government's evidence proved only a single act of transportation (transporting the laptop from Iraq to the United States), Buczkowski argues that he can be convicted and sentenced for only a single violation of § 2252(a)(1).* We agree.

---

*The Federal Rules of Criminal Procedure require objections to defects in an indictment to be made before trial; absent good cause, the failure to timely object amounts to waiver of the objection. See Fed. R. Crim. P. 12(b)(3)(B) & (e). Because Buczkowski did not object to the indictment before trial, the government argues he waived any multiplicity claim. See United States v. Colton, 231 F.3d 890, 909 (4th Cir. 2000) ("Failure to object to a count on grounds of multiplicity prior to trial generally waives that objection."). Based on the unique facts of this case, we do not believe Rule 12 prevents us from considering the multiplicity issue in this case. The transportation counts were not plainly "ineluctably" multiplicitous until trial, thus good cause under Rule 12(e) relieved Buczkowski of the waiver. See United States v. Williams, 89 F.3d 165, 167 n.1 (4th Cir. 1996) (granting relief from Rule 12's waiver provision because the defect in the indictment did not become apparent until trial, when the government's evidence established that the counts in the indictment were "ineluctably contradictory").

13

Whether Buczkowski committed one or twenty-seven offenses by transporting the laptop containing twenty-seven images depends on what Congress intended to be "the allowable unit of prosecution" under the statute. Bell v. United States, 349 U.S. 81, 81 (1955) (internal quotation marks omitted); see United States v. Dunford, 148 F.3d 385, 389 (4th Cir. 1998). At issue in Bell was the Mann Act, 18 U.S.C. § 2421, which at that time made it a crime to "knowingly transport[] in interstate or foreign commerce any woman or girl for the purpose of prostitution." Bell, 349 U.S. at 82 (internal alteration omitted). The defendant in that case had transported two women in the same vehicle on a single interstate trip and had been convicted and sentenced for two violations of the statute. The Supreme Court found the statute ambiguous as to the intended unit of prosecution and held that the ambiguity must "be resolved against turning a single transaction into multiple offenses." Id. at 84.

Section 2252(a)(1) makes it a crime to "knowingly transport[] or ship[] . . . in interstate or foreign commerce any visual depiction . . . of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2252(a)(1)(A). The central focus of the statute is the act of transporting, not the number of individual images transported, and the prohibition against transporting "any" images does not unambiguously make each image

14

transported count as a separate offense. See Dunford, 148 F.3d at 389-90 (finding § 922(g)'s prohibition of possession of "any firearm" ambiguous as to the allowable unit of prosecution); United States v. Coiro, 922 F.2d 1008, 1014 (2d Cir. 1991) (noting that "any" "has typically been found ambiguous in connection with the allowable unit of prosecution, for it contemplates the plural, rather than specifying the singular" (internal quotation marks omitted)). Because the language of § 2252(a)(1) is functionally identical to that in Bell, and because Buczkowski, like the defendant in Bell, transported multiple items through a single act of transportation, we believe Bell compels the conclusion that Buczkowski's conduct amounted to only a single violation of the statute. See Bell, 349 U.S. at 84; see also United States v. Gallardo, 915 F.2d 149, 151 (5th Cir. 1990) (per curiam) (concluding that under § 2252(a)(1), each separate act of transporting is a separate offense and that simultaneously mailing four separate envelopes was four separate acts of transportation, but noting that a "defendant arrested with one binder containing numerous photographs has committed only one act of transportation" (emphasis added)). The district court therefore erred by entering judgment and imposing sentences on twenty-seven separate counts.

15

While Buczkowski's multiplicity claim is not waived under Rule 12(e) under the unique facts of this case, his failure to raise the issue below mandates application of plain-error review, which requires Buczkowski to show the existence of a plain error that affected his substantial rights. See, e.g., United States v. Brack, 651 F.3d 388, 392 (4th Cir. 2011). In light of Bell and our cases addressing the multiplicity issue under other statutes, we believe the error was plain. See id. ("An error is plain when it is obvious or clear under current law." (internal quotation marks omitted)). The error affected Buczkowski's substantial rights because a consecutive statutory-maximum sentence was imposed on the second conviction and the remaining transportation convictions themselves carry collateral consequences notwithstanding the concurrent sentences. See Ball v. United States, 470 U.S. 856, 865 (1985) ("The separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored."); United States v. Bennafield, 287 F.3d 320, 324 (4th Cir. 2002) (special assessment imposed on concurrent sentence affected defendant's substantial rights under plain-error review). Because it would affect the fairness of judicial proceedings to allow multiple convictions and sentences to be imposed for a single offense, we exercise our discretion to correct the error. See Bennafield, 287 F.3d at 324.

16

Accordingly, while we find no error in the first transportation conviction and sentence, we vacate the remaining transportation convictions and sentences (including special assessments) and remand for resentencing.  See United States v. Burns, 990 F.2d 1426, 1438 (4th Cir. 1993) ("The signal danger in multiplicitous indictments is that the defendant may be given multiple sentences for the same offense. . . .  [If] the defendant has suffered multiple convictions and faces multiple sentences, the appropriate remedy is to vacate all of them but one.").

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED