PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 11-4896

TALVIN TAQUANE LAWING,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
Thomas D. Schroeder, District Judge.
(1:10-cr-00310-TDS-1)

Argued: October 26, 2012

Decided: December 31, 2012

Before AGEE, WYNN, and FLOYD, Circuit Judges.

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Wynn and Judge Floyd concurred.

## COUNSEL

**ARGUED:** John Scott Coalter, MCKINNEY PERRY & COALTER, Greensboro, North Carolina, for Appellant. Michael Francis Joseph, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Ripley Rand, United States Attorney, Terri-Lei

O'Malley, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

---

**OPINION**

AGEE, Circuit Judge:

A jury convicted Talvin Taquane Lawing ("Lawing") of one count of possession of ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) for which Lawing was sentenced to 100 months imprisonment. Lawing's conviction and sentence stem from the discovery of a sawed off shotgun and ammunition in his vehicle following a police stop initiated by a tip from a confidential informant ("CI"). On appeal, Lawing challenges the denial of his motion to suppress all evidence found during the stop and search of his vehicle and alleges multiplicitous counts of the indictment; he claims each error warrants reversal of his conviction. He also argues, in the alternative, that his sentence was procedurally unreasonable. For the following reasons, we affirm the judgment of the district court.

I.

On May 3, 2010, the CI informed Detective Jerry Alderman ("Alderman") of the Special Investigations Unit in the Rowan County, North Carolina Sheriff's Office ("RCSO") that he knew a man selling crack cocaine.[1] That afternoon, the CI met with Alderman and told the detective that he had previously purchased crack cocaine from an individual the CI identified as "Drew." The CI described Drew as a black male with short hair in his late twenties or early thirties. In the pres-

---

[1]Because the jury verdict was adverse to Lawing, we recite the facts from the suppression hearing and trial in the light most favorable to the government. *United States v. Murphy*, 35 F.3d 143, 144 (4th Cir. 1994).

ence of Detective Alderman and Detective Kevin Lee Myers ("Myers"), the CI telephoned Drew and ordered a quantity of crack cocaine, which Drew agreed to shortly bring to the CI's residence.[2] The officers recorded the telephone call between Drew and the CI.

The CI informed the detectives that Drew would deliver the crack cocaine to the CI's residence in about 20 minutes and that he would be driving a grey four-door Lexus automobile. The CI also told the detectives that Drew would travel to his residence by driving along Old Concord Road and turning left at Old Beatty Ford Road.

Alderman and Myers waited with the CI at his residence for Drew to arrive and positioned a team of RCSO officers in marked and unmarked cars along Drew's expected route of travel. These officers were provided with Drew's physical description, a description of Drew's vehicle, the predicted route, and expected arrival time at the CI's residence.

About twenty minutes later, Deputy Jason Naves ("Naves"), observed a four-door grey Lexus, driven by a black male matching the CI's description of Drew, turn left off Old Concord Road onto Old Beatty Ford Road. Naves followed the vehicle and effected a traffic stop of the vehicle about a half mile from the CI's residence.[3] When Naves ran the license tag to check the registration of the Lexus, he determined the registration had expired and that the car was registered to Lawing, not a person with the given name of Drew. Naves then approached the Lexus and obtained the drivers' licenses of the driver, which bore Lawing's name, and the passenger, which bore Monica Lowe's name.

---

[2]Alderman recalled that the CI ordered one-quarter to one-half an ounce of cocaine for $300; Myers believed that the CI ordered the cocaine for $150-$300.

[3]Naves testified that he stopped the Lexus before it could arrive at the residence because he was concerned that he would lose sight of the vehicle due to heavy traffic.

A few minutes later, Detective Gregory Bacote ("Bacote"), arrived at the scene and also approached Lawing's vehicle. Because the driver's license of the driver of the Lexus did not reflect the name of Drew, Bacote determined it was necessary to determine if Lawing was indeed Drew given that all the other predictive information from the C.I. had now been verified by the events leading to the stop of the Lexus. Bacote called the same telephone number the CI had used to call Drew. Lawing's cell phone rang within five seconds of when Bacote placed the call.[4] Soon after, Alderman and Myers arrived at the scene. Alderman then called the telephone number used by the CI to call Drew and, once again, Lawing's cell phone rang immediately. After Lawing's phone rang a second time, officers concluded that Drew was in fact Lawing and requested a drug sniffing dog. The police officers then frisked and detained Lawing and began to search his vehicle.

In the course of searching the vehicle, Alderman found a loaded sawed-off 12-gauge shotgun under the carpet covering the spare tire in the trunk with one shell in the chamber. Two additional shotgun shells were found in the vehicle's glove box. No narcotics were found in the vehicle; however, Naves found a small specimen of white powder, in a compartment near the steering wheel, which field tested positive for cocaine.

Lawing was then arrested and later charged in a superseding indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count I); possession of ammunition by a convicted felon, also in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count II);[5] and possession of an unregistered shotgun modi-

---

[4]There is conflicting testimony as to who had possession of the cell phone as between Lawing or one of the police officers, when it rang. The district court assumed the police seized the cell phone. Our analysis assumes the same.

[5]Lawing was charged with possession of the two shotgun shells found in the glove compartment: a Remington 12-gauge shell and a Federal 12-gauge shell. In addition, the sawed-off shotgun was loaded with a single Remington 12-gauge shell.

fied having an overall length of less than 26 inches, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871 (Count III).

Lawing filed a motion to suppress all evidence seized during the stop and search of his vehicle under the Fourth and Fourteenth Amendments.[6] The district court denied Lawing's motion based on its findings that the government demonstrated by a preponderance of the evidence that the officers (1) had a reasonable, articulable suspicion sufficient to stop Lawing's car, (2) established that Lawing was the person with whom the CI arranged the drug deal, and (3) consequently, had probable cause to search Lawing's vehicle. The district court also found that the police did not search Lawing's cell phone for any information but only seized it temporarily to confirm that Lawing was Drew.

During trial, the government called Naves, Myers, and Alderman, who had also testified at the suppression hearing, as witnesses. The officers testified about the stop and search of Lawing's vehicle, and their testimony echoed that provided during the suppression hearing. The government also called Special Agent Darren Soloman to testify about the manufacturers of the shotgun and ammunition (to establish an interstate nexus to the offense).

Upon the conclusion of the government's case in chief, Lawing moved to dismiss all charges under Rule 29 of the Federal Rules of Criminal Procedure contending the evidence was insufficient to prove his guilt. The district court denied the motion, finding that the government's evidence was sufficient upon which a reasonable jury could convict Lawing.

---

[6]Although Lawing's motion to suppress was styled as arising out of the "4th, 5th and 14th Amendments," he did not raise a Fifth Amendment argument. (J.A. 37.) The district court never considered such an argument, and Lawing raises none on appeal. Any Fifth Amendment claim is therefore long since abandoned.

Lawing then presented his evidence by calling passenger Monica Lowe, who testified that two other people had recently driven the Lexus before the day of Lawing's arrest and that she had never seen Lawing possess a firearm or ammunition. Lawing again made a Rule 29 motion to dismiss all charges, which the district court also denied, and the case went to the jury on all three counts. The jury returned a verdict finding Lawing guilty of Count II (possession of ammunition by a convicted felon), but acquitted him of Counts I and III.

The Presentence Investigation Report ("PSR") determined that because Lawing's offense involved a firearm described in 26 U.S.C. § 5845(A), and because Lawing committed the offense subsequent to two felony convictions for a crime of violence, his base offense level, for sentencing guidelines purposes was 26. *United States Sentencing Guidelines Manual* ("USSG") § 2K2.1(a)(1). The PSR gave no enhancements or adjustments to the base offense level which, when combined with a criminal history category of IV, resulted in an advisory Guidelines range of 92 to 105 months imprisonment.

At sentencing, Lawing objected to the PSR's calculation of his base offense level as 26 and argued instead that his base offense level should be 24. The district court found by a preponderance of the evidence that Lawing's conduct involved a firearm as described in 26 U.S.C. § 5845(a), and thus adopted the base offense level of 26 as recommended in the PSR. The district court then adopted the PSR without change, including the 92 to 105 months' imprisonment Guidelines range. The court imposed a within-Guidelines sentence of 100 months imprisonment.

Lawing noted a timely appeal, and this court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

On appeal, Lawing raises four issues: (1) the district court committed reversible error by denying his motion to suppress all evidence seized during the search of his car; (2) the district court erred in denying his Rule 29 motions; (3) the district court plainly erred by allowing the government to proceed at trial on two counts under 18 U.S.C. § 922(g)[7]; and (4) the district court abused its discretion at sentencing in finding by a preponderance of the evidence that his offense involved the possession of a sawed-off shotgun as described by 26 U.S.C. § 5845(a).

---

[7]We need only address this issue briefly. Multiplicity is "the charging of a single offense in several counts." *United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993) (quoting 1 Charles A. Wright, *Federal Practice and Procedure* § 142, at 469 (2d. ed. 1982)). Pursuant to Rule 12(b)(3)(B), a defendant must raise a challenge to a defect in the indictment, i.e., multiplicity, before trial. And pursuant to Rule 12(e), a party that fails to lodge such an objection prior to trial waives his multiplicity defense. Lawing did not raise the multiplicitous issue before, during, or after trial. He raises the issue for the first time on appeal.

It is an open question in the Fourth Circuit whether we review an unpreserved challenge to a multiplicitous indictment for plain error or whether it is altogether waived. *See United States v. Buczkowski*, 458 F. App'x 311, 317 n.* (4th Cir. 2011) (per curiam) (unpublished) (citing *United States v. Williams*, 89 F.3d 165, 167 n.1 (4th Cir. 1996) ("granting relief from Rule 12's waiver provision because the defect in the indictment did not become apparent until trial, when the government's evidence established that the counts in the indictment were 'ineluctably contradictory'")). However, we need not answer this question to resolve the issue in this case. Even if we consider Lawing's multiplicity issue under plain error review and even if we find the counts multiplicitous, Lawing still cannot prevail because any error was harmless. This is so because Lawing was convicted on only one of the two counts. Error only stems from multiplicity when a defendant is punished for multiple convictions on the same offense: "reversal is warranted if the defendant *actually was convicted* on multiplicitous counts and subjected to multiple punishments." *Burns*, 990 F.2d at 1438 (emphasis added). Thus, Lawing's multiplicity claim lacks merit, and we do not discuss it further.

### A.

An appellate court reviews a district court's factual findings in a motion to suppress for clear error and its legal findings de novo. *United States v. Day*, 591 F.3d 679, 682 (4th Cir. 2010). When the district court denies a motion to suppress, the appellate court views the facts in the light most favorable to the government. *United States v. Matthews*, 591 F.3d 230, 234 (4th Cir. 2009).

Lawing first argues the district court committed reversible error by denying his motion to suppress all evidence seized during the search of his car including the ammunition that formed the basis for the sole count of conviction under Count II. We conclude the district court did not err in denying the motion to suppress because the government demonstrated by a preponderance of the evidence that police (1) had a reasonable, articulable suspicion sufficient to stop Lawing's car; (2) established that Lawing was Drew, the person with whom the CI arranged the drug deal; and (3) had probable cause to search Lawing's vehicle.

### i.   Stop of Lawing's Vehicle

Law enforcement "can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Christmas*, 222 F.3d 141, 143 (4th Cir. 2000) (quoting *United States v. Sololow*, 490 U.S. 1, 7 (1989)). Reasonable suspicion is "simply a particularized and objective basis for suspecting the person stopped of criminal activity." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (internal quotation marks omitted). It "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence [even though] [t]he Fourth Amendment [still] requires at least a minimal level of objec-

tive justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

Here, the police had reasonable suspicion, supported by articulable facts, to believe that criminal activity was afoot when it conducted the stop of Lawing's vehicle. The CI had relayed information to the police in a face-to-face setting thereby affording them the clear ability to judge his credibility and corroborate the information he provided. *See United States v. Perkins* 363 F.3d 317, 323 (4th Cir. 2004) (stating that law enforcement in a face-to-face encounter with an informant, can "judge the credibility of the tipster firsthand and thus confirm whether the tip is sufficiently reliable to support reasonable suspicion"). Informants who report tips face-to-face are "more trustworthy and reliable than [an] anonymous tip" because law enforcement can hold the informant accountable for false statements. *Christmas*, 222 F.3d at 144. Moreover, informants who make statements adverse to their own penal interests may bolster their credibility. *See United States v. Harris*, 403 U.S. 573, 583 (1971) (stating "[a]dmissions of crime . . . carry their own indicia of credibility.").

The totality of the circumstances in the case at bar afforded the police reasonable suspicion to stop Lawing's car. Police had a face-to-face encounter with the informant, who provided substantial and verifiable details that established the necessary indicia of reliability: Lawing drove the car that the CI said he would drive; Lawing took the route that the CI said he would take; Lawing appeared at the time the CI said he would arrive, in a place close to the intended delivery address.

This course of events allowed law enforcement to corroborate the CI's account of the time and circumstances of the intended cocaine delivery. By exposing himself to potential criminal liability in telling the police he had previously purchased crack cocaine from Drew, the CI further enhanced his credibility.

Despite significant factual distinctions between what occurred in this case and the facts in *Florida v. J.L.*, 529 U.S. 266 (2000), Lawing cites *J.L.* as support for his argument that the police lacked reasonable suspicion to stop his vehicle. However, the facts in *J.L.* stand in such contrast to those in the case at bar that *J.L.* actually supports the holding of the district court and the position of the government in this appeal.

In *J.L.*, an anonymous informant in an unknown location provided police the present location of a person alleged to possess a firearm. The police carried out a *Terry*[8] stop of J.L., recovered a firearm, and J.L. moved to suppress. *Id.* at 268-69. The Supreme Court agreed that the motion to suppress was properly granted. The Court held that the police needed more than just "an anonymous tip lacking indicia of reliability" to stop and detain J.L. *Id.* at 274. Because the police knew neither the identity nor the location of the informant, police could not assess the informant's credibility nor hold the informant responsible for fabricated information. As the Court explained, "[a]ll the police had to go on . . . was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *Id.* at 271. The anonymous tip in *J.L*, without more, was insufficient as a matter of law because "reasonable suspicion . . . requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* at 272.

The facts of the case at bar, however, are materially different from those in *J.L.* Here, police had ample indicia that the CI's tip was credible. Unlike in *J.L.*, the CI here was known to police. And unlike in *J.L.*, the CI ordered cocaine base from the defendant in the presence of the officers, thus providing the police with a credible assertion that Lawing was engaged in illegal activity. Furthermore, the CI's tip here con-

---

[8]*Terry v. Ohio*, 392 U.S. 1 (1968).

tained "predictive information" that the Supreme Court found lacking in *J.L. Cf. id.* at 271. In sum, the CI's tip in this case had a "tendency to identify a determinate person," i.e., Lawing, *and* was "reliable in its assertion of illegality." *Id.* Accordingly, we reject Lawing's contention that *J.L.* requires reversal of the district court, and readily conclude that the stop of Lawing's vehicle was appropriate.

### ii.    Seizure of Lawing's Cell Phone

Lawing also contends his cell phone was illegally seized without probable cause. Accordingly, he argues any evidence discovered subsequent to the seizure should have been suppressed.

After stopping the Lexus Lawing was driving, Deputy Naves examined his driver's license, which did not reflect the name of the driver as Drew. In view of the other information from the CI on the make and color of the car, its precise route and timing, the physical description of the driver, all of which the police had now verified, they undertook to determine whether Lawing was indeed Drew. To do so, officers simply called the telephone number that the CI had earlier used to place the crack cocaine order with Drew.

The Supreme Court has stated "in appropriate circumstances the Fourth Amendment allows a properly limited 'search' or 'seizure' on facts that do not constitute probable cause to arrest or to search for contraband or evidence of crime." *United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975). A court determines the lawfulness of such a limited seizure by balancing the right of the individual to be free of unreasonable searches and seizures with the opposing interests of law enforcement. *United States v. Place*, 462 U.S. 696, 703 (1983). When law enforcement has substantial interests in carrying out a search or seizure, it may carry out minimally intrusive seizures based on reasonable suspicion. *Id*. at 703-04.

At the outset, we note that Lawing, in his brief, characterizes the officers' actions as a "search" of his cell phone. The district court, however, found the "[o]fficers did not search Lawing's cell phone for any information." (J.A. 149). We agree with the district court's assessment, as nothing in the record supports Lawing's claim that his cell phone was the subject of a search. The police did not attempt to retrieve any information from within the phone. Instead, the officers' possession of Lawing's cell phone was limited to quickly determining whether Lawing's phone would ring when Drew's number was dialed. Detective Bacote did not seize Lawing's cell phone to gain information from within the phone and possessed it for no other purpose than confirming Lawing's identity as Drew.

This limited seizure of the cell phone was justified. Although Lawing provided a driver's license that did not bear the name Drew, the totality of the circumstances afforded the police officers reasonable suspicion to take minimal steps to determine whether Lawing was Drew.

This seizure was minimally intrusive, and the "strong countervailing governmental interests," *Place*, 462 U.S. at 706, of preventing the trafficking and distribution of cocaine[9] outweighed Lawing's possessory interest in his cell phone during the brief duration of the stop. Law enforcement's momentary seizure of Lawing's phone was permissible in the limited and specific context in which it occurred and did not violate the Fourth Amendment.[10]

---

[9]The government has a significant interest in preventing the trafficking and distribution of illegal drugs. *United States v. Mendenhall*, 446 U.S. 544, 561 (1980) (Powell, J., concurring in part and concurring in the judgment).

[10]In the alternative, as a factual matter, the district court found "on this record the officer's possession of Lawing's cell phone was irrelevant to the determination of probable cause, because every indication is that the officers would have heard it ring as well on the center console of Lawing's

### iii.  Search of Lawing's Vehicle

Lawing also contends police lacked the requisite probable cause to search his vehicle. Police typically must obtain a warrant to carry out a search, but an exception to the warrant requirement has long been recognized where probable cause is established to believe that a vehicle contains contraband or evidence of a crime. *See Carroll v. United States*, 267 U.S. 132, 153 (1925) (holding "contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant").

Probable cause is "not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). It is determined by examining facts "from the standpoint of an objectively reasonable police officer." *Ornelas*, 517 U.S. at 696. Probable cause is established in those cases when "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Id.*

Lawing argues that there was not a fair probability that contraband or evidence of a crime would be found in his vehicle. *Cf. Gates*, 462 U.S. at 238. As recounted above, the totality of the circumstances gave the police reasonable suspicion to stop the vehicle and seize the cell phone. Indeed, prior to Lawing's cell phone ringing, the predictive information provided by the CI had been almost entirely born out by the facts as observed by police. All that remained was for the officers to verify that the individual driving the Lexus was the same person from whom the CI had offered to purchase cocaine

---

vehicle where it rested when the vehicle was stopped had it not been handed over to the officers." (J.A. 149). In light of our holding that the limited seizure of the cell phone was not a violation of the Fourth Amendment, we need not consider the district court's alternative holding that Lawing was, in any event, not prejudiced by the seizure.

base, thus tipping the scales from reasonable suspicion to probable cause. When police called the number provided by the CI and twice observed Lawing's cell phone ringing, they verified that Lawing was the target of their investigation, and established a substantial likelihood that Lawing was trafficking in contraband, that is, they now possessed probable cause. The facts and circumstances in this case were thus sufficient to warrant a man of reasonable prudence to believe that contraband or evidence of a crime would be found in Lawing's vehicle.

Because the stop and search of Lawing's car and the seizure of Lawing's cell phone did not violate Lawing's Fourth Amendment rights, the district court did not err in denying his motion to suppress.

### B.

Lawing next argues that the district court erred in denying his Rule 29 motions to dismiss because the government failed to adduce sufficient evidence of Lawing's possession of ammunition as charged in Count II.

This court reviews the district court's denial of a defendant's Rule 29 motion de novo. *United States v. Alerre*, 430 F.3d 681, 693 (4th Cir. 2005). We will uphold "a jury verdict if there is substantial evidence, viewed in the light most favorable to the government, to support it." *United States v. Lam*, 677 F.3d 190, 198 (4th Cir 2012) (internal quotation marks and alterations omitted). Evidence is regarded as substantial when "a reasonable finder of fact could accept [the evidence] as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1986) (en banc). An appellate court "can reverse a conviction on insufficiency grounds only when the prosecution's failure is clear." *United States v. Moye*, 454 F.3d 390, 394 (4th Cir. 2006) (internal quotation marks omitted).

Here, the district court properly denied Lawing's Rule 29 motions because the government put forth sufficient evidence upon which the jury could conclude that Lawing constructively possessed the ammunition. 18 U.S.C. § 922(g)(1) states in relevant part "[i]t shall be unlawful for any person . . . who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition." Section "922(g)(1) does not require proof of actual or exclusive possession; constructive or joint possession is sufficient." *United States v. Gallimore*, 247 F.3d 134, 136-37 (4th Cir. 2001). Constructive possession is established when the government produces evidence that shows "ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed." *Blue*, 957 F.2d at 107 (quoting *United States v. Ferg*, 504 F.2d 914, 916-17 (5th Cir. 1974)).

Whether constructive possession is established is a "fact-specific" inquiry. *United States v. Mudd*, 685 F.3d 473, 477 (5th Cir. 2012). "[W]e have repeatedly affirmed the right of juries to consider proximity as part of their analysis of a defendant's constructive possession." *United States v. Shrader*, 675 F.3d 300, 308 (4th Cir. 2012).

The government introduced evidence that showed Lawing was both the driver and the owner of the car in which the ammunition was found. Deputy Naves verified that the vehicle was registered in Lawing's name. Furthermore, the government introduced evidence that Lawing's identification card, depicting his name and picture, was found beneath the shotgun shells in the glove compartment.[11]

---

[11]Lowe testified that the identification card belonged to her son, Brendell Lowe instead of Lawing. She also testified that two other people, including Brendell Lowe, drove the vehicle around the time of Lawing's arrest. Detective Myers testified that the identification card bore Lawing's name. Based on the jury's verdict, the jury credited Myers and did not find Lowe's testimony credible.

Lawing argues because he was not the only person to drive the car, the government must show a greater connection or nexus between Lawing and the ammunition. The government, however, has shown the necessary connection by proving that Lawing was both the owner and driver of the car in which the ammunition was found and by showing that his identification card was beneath the ammunition. *See United States v. Single-ton*, 441 F.3d 290, 296 (4th Cir. 2006) ("A person has constructive possession over contraband when he has ownership, dominion, or control over the contraband itself or over the premises or *vehicle in which it [is] concealed.*") (quoting *United States v. Armstrong*, 187 F.3d 392, 396 (4th Cir. 1999) (emphasis added)). In light of the fact-specific nature of the constructive possession inquiry, we conclude that these facts were sufficient evidence from which a jury could conclude Lawing possessed the ammunition. Accordingly, the district court did not err in denying the motions to dismiss.

C.

Lawing lastly contends his sentence was procedurally unreasonable,[12] contending the district court abused its discretion in finding by a preponderance of the evidence that he possessed a sawed-off shotgun as described by 26 U.S.C. § 5845(a). As a consequence, Lawing argues the district court used the incorrect base offense level, 26, in calculating his advisory Guidelines range.

We review a district court's sentencing decisions for reasonableness under a deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). When reviewing whether a district court properly calculated the Guidelines range we "review the district court's legal conclusions *de novo* and its factual findings for clear error." *United States v.*

---

[12]Lawing only argues that the district court incorrectly calculated his advisory Guidelines range and does not bring a separate claim that his sentence was substantively unreasonable.

*Layton*, 564 F.3d 330, 334 (4th Cir. 2009). A sentence is procedurally unreasonable if the district court committed a "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence[.]" *Gall*, 522 U.S. at 51.

"A verdict of acquittal demonstrates only lack of proof beyond a reasonable doubt; it does not necessarily establish the defendant's innocence." *United States v. Isom*, 886 F.2d 736, 738 (4th Cir. 1989). At sentencing, a district court may consider conduct of which a defendant has been acquitted if the conduct has nonetheless been proved by a preponderance of the evidence. *United States v. Watts*, 519 U.S. 148, 157 (1997). Accordingly, the mere fact that the jury acquitted Lawing of firearms charges did not preclude the district court from considering whether Lawing did in fact possess a firearm.

USSG § 2K2.1(a) sets forth the applicable base offense levels for firearms offenses. Pursuant to USSG § 2K2.1(a)(1), a defendant shall receive a base offense level of 26 if the offense involved, *inter alia*, a "firearm that is described in 26 U.S.C. § 5845(a) and the defendant has two prior felony convictions for a crime of violence or a controlled substance offense." As relevant here, § 5845(a) includes the following description: a shotgun "having a barrel or barrels of less than 18 inches in length."

USSG § 52K2.1(a)(2), on the other hand, provides for the lower base offense level of 24 if the defendant has merely sustained two felony convictions for crimes of violence or controlled substance offenses. Lawing does not contest that he has two predicate offense convictions. Rather, the core of his contention is that he did not possess the firearm, and therefore USSG § 2K2.1(a)(2) should apply to make his base offense

level 24. With a total offense level of 24 and criminal history category of IV, Lawing argues his advisory Guidelines range should have been 77 to 96 months rather than 92 to 115 months as calculated in the PSR, and as determined by the district court.

Although the sawed off shotgun was found under the carpet in the trunk of his car, Lawing argues the absence of his fingerprints, DNA, hair, fiber, or other physical evidence on the firearm prohibit a finding that he possessed the weapon. Therefore, he claims the government failed to prove by a preponderance of the evidence that a firearm described in 26 U.S.C. § 5845(a) was involved in the offense for which he was convicted. Accordingly, he argues the lower base offense level found in USSG § 2K2.1(a)(2) should apply and he is entitled to be resentenced. We disagree.

The district court was in the best position to determine the sufficiency of the evidence and the credibility of the witnesses and determined that "Lawing knowingly possessed [the firearm], at least constructively possessed it, based upon a preponderance of the evidence that was presented at trial." (J.A. 312-313). We review the district court's factual determinations under a clear error standard. *Layton*, 564 F.3d at 334. Based on the evidence and the witness testimony that Lawing was the owner and driver of the vehicle in which the firearm was found, it was not clearly erroneous for the district court to find by a preponderance of the evidence that Lawing constructively possessed the firearm. And contrary to Lawing's claim on appeal, direct evidence is not required to establish possession. Rather, constructive possession may be established through direct or circumstantial evidence. *United States v. Nelson*, 6 F.3d 1049, 1053 (4th Cir. 1993).

Lastly, we note the police located two types of 12-gauge shotgun shells during their search of Lawing's vehicle. Lawing's possession of those shells served as the basis for his conviction of Count II of the indictment. The district court's

finding, therefore, that Lawing constructively possessed the 12-gauge shotgun is consistent with the jury's verdict finding Lawing in possession of compatible ammunition. Moreover, the sawed-off shotgun was loaded with a Remington 12-gauge shotgun shell—the same make as one of the shells found in the glove compartment. As discussed above, the mere fact that the jury failed to convict Lawing of Count I, possession of the firearm, did not preclude the district court from finding, for sentencing purposes, that Lawing did in fact possess the weapon.

In light of our deferential review of the district court's factual findings at sentencing, and in view of the evidence adduced by the government, we hold the district court did not abuse its discretion in finding by a preponderance of the evidence that the government had shown Lawing possessed the shotgun found in the trunk of his car. Consequently, the district court did not err in determining a base offense level of 26. Lawing's sentence was not procedurally unreasonable.

### III.

For the aforementioned reasons, we affirm the judgment of the district court.

*AFFIRMED*