**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 14-4446**

_____

UNITED STATES OF AMERICA,

                Plaintiff – Appellee,

    v.

CHARLIE WAYNE BRYANT,

                Defendant – Appellant.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:11-cr-00072-MOC-1)

_____

Argued: May 12, 2015                Decided: July 22, 2015

_____

Before WILKINSON, AGEE, and WYNN, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Wynn wrote the opinion, in which Judge Wilkinson and Judge Agee joined.

_____

**ARGUED:** Cindy Helene Popkin-Bradley, CINDY H. POPKIN-BRADLEY, ATTORNEY AT LAW, Raleigh, North Carolina, for Appellant. William Michael Miller, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Anne M. Tompkins, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

This is the second time we are asked to review the sentence of Defendant Charlie Wayne Bryant after he pled guilty to assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1) and (b). The first appeal required us to evaluate the district court's application of United States Sentencing Guidelines ("U.S.S.G.") § 2A2.2 for aggravated assault. United States v. Bryant, 540 Fed. App'x 241 (4th Cir. 2014). Although the district court heard facts that would have supported the application of U.S.S.G. § 2A2.2, the court made conflicting statements suggesting it may have intended to instead apply U.S.S.G. § 2A2.4, the guideline for obstructing or impeding a federal officer. We therefore vacated the sentence and remanded so that the district court could make necessary factual findings and clarify its intent. On remand, the district court conducted another sentencing hearing and once again imposed a sentence using U.S.S.G. § 2A2.2.

With this appeal, Defendant argues that the district court improperly applied U.S.S.G § 2A2.2 and asks us to order the district court to instead apply U.S.S.G. § 2A2.4, which would significantly reduce his guidelines range. This we cannot do because the district court made factual findings that are supported by the record and justify a sentence under U.S.S.G. § 2A2.2. Accordingly, we must affirm.

3

I.

This appeal arises from an altercation between Defendant and a security officer at the Social Security Administration ("SSA") office in Gastonia, North Carolina. Defendant was a homeless veteran suffering from chronic mental illness. In February 2011, he went to the SSA office to inquire "about some checks that [his] deceased wife tore up in 2005," but the claims representative could not help him. J.A. 157. Defendant then became belligerent, and his voice got "real, real loud." J.A. 104.

The on-duty security officer, Edward Seigle, approached Defendant and urged him to lower his voice and stop using profanity, but Seigle's comments further agitated Defendant. An altercation ensued, and although accounts vary as to how it started, it is clear that Defendant and Seigle ended up on the ground in the bathroom of the SSA office after Defendant "swung at" Seigle. J.A. 86. Defendant thrashed wildly, but Seigle eventually subdued Defendant until police arrived.

Following his arrest, Defendant was charged with, and pled guilty to, assault on a federal officer in violation of 18 U.S.C. § 111(a)(1) and (b). Defendant's sentencing hearing focused primarily on the mechanics of the altercation, particularly on whether Defendant attempted to grab Seigle's firearm. During the hearing, the district court heard testimony from Defendant,

4

Seigle, other SSA employees who witnessed the incident, and the arresting officer.

Seigle testified that Defendant "started up at the bottom of my holster, he got to the top of . . . my gun in my holster . . . . [H]e was after my weapon." J.A. 130. Defendant confirmed that he "put [his] hand on [Siegle's] holster." J.A. 158. However, he denied that he was trying to take Seigle's firearm and instead asserted that he touched the holster merely to "scare" Seigle so that Seigle would "get off of me." J.A. 158. But the two SSA employees who witnessed the altercation confirmed Seigle's version of events. They testified that Defendant "grabbed on to Officer Seigle's holster" and was "reaching for [Seigle's] sidearm." J.A. 107, 118. The district court also heard from the arresting officer, who testified that after transporting Defendant to jail and reading him his Miranda rights, Defendant stated that he "was trying to grab [Seigle's] Glock," and that his "intentions were to kill him because he was beating me." J.A. 147.

At the conclusion of the hearing, the district court calculated Defendant's guidelines range using the aggravated assault guideline under U.S.S.G. § 2A2.2 and imposed a within-guidelines sentence of 130 months.

Defendant appealed to this Court, challenging both the validity of his guilty plea and the calculation of his guidelines range. Bryant, 540 Fed. App'x at 243.

5

After affirming the denial of Defendant's motion to withdraw his guilty plea, we vacated his sentence and remanded to the district court to clarify its factual findings and to resentence Defendant. Id. at 251. Specifically, we asked the district court to resolve an ambiguity it created when it made conflicting statements during Defendant's sentencing hearing. On the one hand, the district court accepted "all of the findings in the Presentence Report." J.A. 167. This included a recommendation to apply U.S.S.G. § 2A2.2, the guideline for aggravated assault, which requires that the assault involved a dangerous weapon. On the other hand, the district court stated that the offense took place "with no weapon involved by the defendant." J.A. 168. These contradictions made the district court's intent unclear because "[i]f no dangerous weapon was involved, U.S.S.G. § 2A2.2 cannot apply." Bryant, 540 Fed. App'x at 250.

In addition, an error in the presentence report clouded the district court's intent. The presentence report described the charged offense as an assault by use of a deadly weapon when the actual crime charged and pled to was assault inflicting bodily injury.

We therefore vacated and remanded so the district court could resolve these discrepancies, clarify its intent, and resentence Defendant. Importantly, though, we did not hold that the district court could not apply the aggravated assault guideline:

6

> To the contrary, the district court heard facts that might supports its application of U.S.S.G. § 2A2.2 via the Relevant Conduct Guideline, U.S.S.G. § 1B1.3. For example, Seigle [and other SSA employees] all testified that Defendant was grabbing for Seigle's gun. Defendant himself admitted that he was attempting to scare Seigle by touching his holster. And [the arresting officer] testified that Defendant told him that he was attempting to grab Seigle's "glock" and that if he had been successful, he would have killed Seigle.

Id. at 250–51. Nevertheless, we chose not to speculate as to what the district court might have intended.

On remand, the district court conducted another sentencing hearing. During the hearing, the district court acknowledged that "[t]he record may not be as clear as it should have been," but that it would "correct[] the record today." J.A. 235. To that end, the district court noted that it "was not saying there was no gun involved in the case at the time." J.A. 235. Rather, the district court meant that "[t]he defendant didn't bring the deadly weapon there." J.A. 230. The district court went on to state the guideline it was applying and why it was applying it:

> [A]ggravated assault . . . is defined . . . as a felonious assault that involved a dangerous weapon with the intent to cause bodily injury . . . .
>
> The Court finds that the threatened use of it, that is, in the middle of a fight reaching for the officer's firearm, as all of the witnesses, including defendant, said the defendant did. The defendant has changed his story, but the Court is discounting that and finds from the preponderance of the evidence that he was going for the gun. That because of that this becomes an aggravated assault and, therefore, that's why I'm finding 2A2.2 is correct.

7

J.A. 237–38.  The district court then calculated the guidelines range and imposed a within-guidelines sentence of 115 months.  This appeal followed.

II.

Defendant maintains on this second appeal that the district court again erred in applying U.S.S.G. § 2A2.2 instead of U.S.S.G. § 2A2.4.  Defendant argues that U.S.S.G. § 2A2.2 cannot apply because there is no factual basis to support a finding that the assault "involved" a dangerous weapon.  We disagree.

When reviewing a district court's sentencing determination, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range . . . ." Gall v. United States, 552 U.S. 38, 51 (2007).  We assess the district court's guidelines calculation by reviewing its legal conclusions de novo and its factual findings for clear error.  United States v. Lawing, 703 F.3d 229, 241 (4th Cir. 2012).  Clear error occurs only when we are left with "the definite and firm conviction that a mistake has been committed." United States v. Harvey, 532 F.3d 326, 337 (4th Cir. 2008).

Here, Defendant pled guilty to violating 18 U.S.C. § 111(a)(1) and (b), a statute making it a crime to assault, resist, or impede a government officer or employee.  The sentencing guidelines direct

8

that a defendant's sentence for violating Section 111 must be calculated either under the guideline for "Obstructing or Impeding Officers," U.S.S.G. § 2A2.4, or under the guideline for "Aggravated Assault," U.S.S.G. § 2A2.2. See U.S.S.G. App. A. The district court here chose the guideline for "Aggravated Assault," U.S.S.G. § 2A2.2.

The central question before us is whether Defendant's offense "involved" a firearm. U.S.S.G. § 2A2.2. "Aggravated assault" is defined, in relevant part, as "a felonious assault that involved . . . a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon." U.S.S.G. § 2A2.2 app. n.1 (emphasis added). Thus, "involve" is the operative threshold needed to trigger Section 2A2.2 here.

The term "involve" is, on its face, broad and not limited to, for example, "use," "possess," or "control." See United States v. Cheeseman, 600 F.3d 270, 278–81 (3d Cir. 2010) (interpreting the phrase "involved in" as used in a firearm statute and concluding "involve" is a "broad term"). While not defined in the guidelines, the dictionary defines "involve" as "[t]o have as a necessary feature or consequence; entail . . . [t]o relate to or affect." American Heritage Dictionary 923 (5th ed. 2011). See also, e.g., Webster's Third New International Dictionary 1191 (2002) (defining "involve" as "engage," "entail," "imply," and "implicate"). And "[t]his [C]ourt has long consulted dictionaries of common usage in

9

order to establish the plain meaning of disputed statutory language." United States v. Fugit, 703 F.3d 248, 254 (4th Cir. 2012).

We do not purport to establish some grand test for when an assault "involves" a firearm. But when we turn to the facts of this case, it is clear that Defendant's conduct, as found by the district court, satisfies the involve threshold.

During the resentencing hearing, the district court explained that when it stated during the first sentencing hearing that the offense took place "with no weapon involved by the defendant," J.A. 168, it was merely commenting that Defendant did not bring the weapon to the SSA office himself.

Moreover, the district court relied upon the very facts that we stated could support application of U.S.S.G. § 2A2.2. See Bryant, 540 Fed. App'x at 250–51. Namely, Seigle and two other SSA employees testified that Defendant "reach[ed] for the officer's firearm" and was "going for the gun." J.A. 237. Defendant also admitted that he touched Seigle's holster. And the arresting officer testified that Defendant stated he was attempting to grab Seigle's "glock" and intended to use it to kill Seigle.

The district court then discredited Defendant's version of the events in which he claimed, among other things, that he was not the aggressor and did not touch or intend to take Seigle's

10

gun.  These findings together led to the conclusion that Defendant "threatened [the] use" of Seigle's firearm and that the assault involved a dangerous weapon.  J.A. 237.  Accordingly, the district court found "from the preponderance of the evidence that . . . this becomes an aggravated assault and, therefore, that's why . . . 2A2.2 is correct."  J.A. 237–38.

Given the conflicting testimony, the district court was entitled to discredit Defendant's version of the incident and find that he was attempting to grab Seigle's firearm.  And absent clear error, which is not present here, we are not at liberty to disturb such supported factual findings.  Harvey, 532 F.3d at 337 ("We . . . review the factual findings of the district court . . . for clear error." (citation omitted)).  Instead, we must uphold the district court's determination.  See United States v. Chandia, 675 F.3d 329, 337 (4th Cir. 2012).


III.

For the reasons set forth above, we conclude that the district court properly applied the aggravated assault guideline.  We therefore

AFFIRM.