HENRY HOLLINGSWORTH, HEIR OF LEVI HOLLINGSWORTH, APPELLANT vs. PHILIP BARBOUR AND OTHERS, APPELLEES.

H. entered, with the proper surveyor for the district of Kentucky, forty-five thousand acres of land, in the county of Washington in that state, by virtue of treasury warrants. A survey was made thereon in 1786, and a patent for the land issued to H. in 1797. The warrants were purchased by the ancestor of the complainant, by a parol agreement with H. previous to their entry. Before this agreement H., in connection with a person who owned other warrants, had made an agreement with S. to locate their respective warrants, which agreement was ratified by the complainant, who paid a sum of money to S. for fees of patenting, and agreed to make S. a liberal compensation for his services; and S. located and surveyed under the warrants, forty-five thousand acres, returned the surveys to the office, and paid the fees of office. The locating and surveying of the warrants, and all the necessary steps for completing the title, were done by S., who was employed first by H., and afterwards by the complainant, who paid in money for the same. H. being deceased, and having made no conveyance of the legal title to the lands, the complainant filed a bill in the county of Washington, " against the unknown heirs of H." and in 1815 a decree was made by that court, for a conveyance of the land by the unknown heirs, or in their default by a commissioner, appointed in the decree to make the same. *Held*, that the conveyance was not authorised by the laws of Kentucky, in force at the time of the decree.

By the general law of the land, no court is authorised to render a judgment or decree against any one, or his estate; until after due notice by service of process to appear and defend. [472]

The acts of the assembly of Kentucky authorising proceedings against absent defendants referred to and examined. [472]

The statute under which the proceedings of the complainants in this case were instituted, authorised the court to make a decree for a conveyance in a suit for such a conveyance, only in the case in which the complainant claims the land as *locator, or by bond or other instrument in writing.* [473]

The claim of " a locator" is peculiar to Kentucky, and has been universally understood by the people of the country to signify that compensation of a portion of the land located, agreed to be given by the owner of the warrant, to the locator of it for his services. [473]

The record of proceedings against " unknown heirs," is no evidence that any such heirs existed; and the decree and deed made in pursuance of it, cannot avail to pass any title without some evidence that there were some heirs. [477]

APPEAL from the circuit court of the district of Kentucky.

The case is fully stated in the opinion of the court.

The cause was argued by Mr Sheffey for the appellants, and by Mr Wickliffe for the appellees.

[Hollingsworth vs. Barbour and others.]

Mr Justice BALDWIN delivered the opinion of the Court.

This was a bill, filed on the equity side of the court, by the appellants, setting forth, that on the 21st of February 1784, a certain John Abel Hamlin entered, with the proper surveyor for the district of Kentucky, forty-five thousand acres of land, lying in the county of Washington; by virtue of sundry treasury warrants, issued by the state of Virginia.    That a survey was made tnereon, on the 13th of April 1786; and a patent issued the 8th of June 1798, to the said John Abel Hamlin.   That previous to the date of such entry, the complainant had purchased from the said Hamlin the warrants on which the entry and surveys had been made, for the sum of three thousand seven hundred dollars; which he paid.   That although the entries, survey and patent were in the name of said Hamlin, they were for the benefit of the complainant; who alleged the equitable title thereto as belonging to him.   That Hamlin being dead, without having made a conveyance, the complainant, in 1814, exhibited his bill in chancery, in the circuit court for the county of Washington, against the unknown heirs of said Hamlin; and obtained a decree of said court, ordering them to convey to him the legal title of said lands, by a day named in said decree; in default whereof the court appointed a commissioner for that purpose, who, by deed approved by the court, conveyed the same to the complainant on the 15th of August 1815: by virtue of which decree and conveyance, he became vested with the right, title and interest of said Hamlin to all the lands embraced in the patent of the commonwealth to him.

The bill then sets forth, that the defendants, sixty-six in number, had obtained grants of various portions of the land patented to Hamlin, and were in possession of the same, by virtue of warrants, entries and surveys adverse to his: and concludes with a prayer against the appellees, the respondents below, that they may be compelled to convey to the complainant the land claimed by them respectively under their patents, which were elder than the one to Hamlin.

In support of the allegations of his bill, the complainant produced the entries, survey and patent before mentioned, but offered no evidence of any contract, written or parol

between him and Hamlin for the sale of these lands; and did not attempt to rest his claim to hold the title of Hamlin on any other authority than the decree of the circuit court of Washington county, and the deed of the commissioner appointed to execute the conveyance to him of the lands included in the patent. In the court below, the defendants, in their answers, made various objections to the entries on Hamlin's warrants: set up title in themselves, by the patents, under which they claimed; and their long possession of the lands within their respective surveys, for a period in many of the cases exceeding, and in few falling short of the period prescribed by the act of limitation.

If this court entertained a doubt of the validity of the decree rendered by the circuit court of the county of Washington, ordering a conveyance of the title of Hamlin in the lands in question to Hollingsworth, we should feel it our duty to enter into the consideration of all the questions arising on the bill, answer, and exhibits in this case.

When the case was first reached on the calendar, no counsel appeared on the part of the appellants. The counsel of the appellees brought the case before the court, and presented the various points which arose at the hearing in the circuit court; beginning with the first in order, the right of Hollingsworth to put himself in place of Hamlin, as to a remedy against the appellants. He was informed by the court, that, as then advised, they did not wish to hear him on the other points. Counsel afterwards appearing for the appellants, and requesting to be heard, the court directed an argument on what then appeared to them the turning question on the whole case. We have carefully weighed the reasons urged for a reversal of the decree of the court below on that ground, and still retain the opinion formed on the ex parte argument; that the decree in the case of Hollingsworth against the unknown heirs of Hamlin, and the deed executed by the commissioners pursuant thereto, was void, and wholly inoperative to transfer any title; and that Hollingsworth, or his heir, had no right to call on the appellees to transfer their prior legal title to him, as representing Hamlin or his heirs. That be the title of the

[Hollingsworth vs. Barbour and others.]

appellees good or bad, the complainant had no equity against them. Being a stranger to Hamlin's title, he had no right to any conveyance to himself, or any relief sought for by the bill now under the consideration of the court.

The original bill against the unknown heirs of Hamlin, thus deduces the complainant's right to a decree for the conveyance of the legal title vested in Hamlin or his heirs by the entries, survey, and patent before referred to:—That Hamlin was indebted to the complainant in the sum of about four thousand dollars by book account; that he had absconded, and complainant took a writ of attachment against his effects, out of the court of common pleas of the county of Philadelphia, of September term 1784; that in execution of that writ the sheriff broke open the counting house of Hamlin, but found no property therein except thirty-nine Virginia warrants for ninety thousand acres of land, of which he took possession, but made no return of them on the writ: that Hamlin some time afterwards returned to Philadelphia, being wholly insolvent, and proposed to complainant that he should take the warrants for the sum of three thousand seven hundred dollars, to which he assented, and gave Hamlin a credit to that amount on the account; that the warrants were accordingly delivered to the complainant, but without any transfer or assignment in writing. That before the circumstances of Hamlin became desperate, he had, in co-operation with a person who owned some Virginia warrants, made an agreement with Benjamin Stevens of New Jersey, to locate their respective warrants; which agreement was ratified by the complainant, who paid to Stevens one hundred and twenty-three pounds eight shillings and nine pence, Pennsylvania currency, for fees of patenting, &c. and further agreed to make Stevens a liberal compensation for his personal labour; and he then commenced the business of locating, surveying, &c.: that Stevens made entries and executed surveys of forty-five thousand acres (the lands in controversy); returned the plats and certificates of survey to the register's office, and paid the fees of office.

It thus appearing from the complainant's allegations in

his bill, that the locating and surveying of the warrants, and all the steps necessary to the completion of the title were done by Stevens, who was employed for that purpose, first by Hamlin, and afterwards by himself; and that his services were compensated by money; it becomes unnecessary to consider the other matters set forth by the complainant. Not being a "locator" of these lands, and showing the location to have been made by another; he excluded himself from all pretence of claiming a right to proceed as such against the unknown heirs of Hamlin.

The circuit court of Washington county could take cognizance of the case presented to them by the complainant, by no principle of the common law, or rule of a court of equity. Their powers to do so must be conferred by some law of Kentucky, within which the complainant must have brought himself, or the proceedings would be void for want of jurisdiction in the court. As this court fully concurs with the views taken of this course by the late learned and lamented Mr Justice Trimble, who pronounced the decree of the circuit court in a very lucid and elaborate opinion, returned with the record; we deem it wholly unnecessary to do more than to refer to it as containing the reasons of the decree, which we unanimously approve.

"This is a controversy for land under conflicting adverse titles. The complainant claims the land by virtue of two entries, made with the surveyor of Washington county on the 23d of February 1784, in the name of John Abel Hamlin; an inclusive survey of these entries made on the 12th day of April 1786; a grant issued thereon to John Abel Hamlin on the 8th day of June 1797; and a deed of conveyance made by a commissioner on behalf of the unknown heirs of John Abel Hamlin to the complainant, in obedience to and in pursuance of a decree of the circuit court for the county of Washington. The defendants claimed the land under and by virtue of sundry entries, surveys and grants, elder than the grant to John Abel Hamlin. The defendants, in their answers, controvert the validity of John Abel Hamlin's entries; insist that John Abel Hamlin and his heirs, if he left any, were aliens, incapable of taking, holding, or conveying

[Hollingsworth *vs*. Barbour and others.]

real estate ; deny that John Abel Hamlin left any heirs to inherit his title : and deny that the complainant has any interest in or title to the estate of John Abel Hamlin in the premises.  They further rely on their elder legal titles ; insist upon the validity and superiority of the several entries under which they hold ; and in bar of the relief sought by the bill, allege they have had upwards of twenty years adverse possession of the land in controversy, prior to the institution of this suit.

" It is argued for the defendants, tnat the decree of the Washington circuit court is void ; and that no title passed by it, and the commissioner's deed made in pursuance of it, to the complainant.

" It must be conceded, that if the decree is void, the commissioner's deed, made by its authority, can pass nothing to the complainant.

" This court disclaims all authority to revise or correct the decree, on the ground of supposed error in the court who pronounced the decree.  The principle is too well settled, and too plain to be controverted, that a judgment or decree pronounced by a competent tribunal against a party having actual or constructive notice of the pendency of the suit, is to be regarded by every other *co-ordinate* tribunal ; and that if the judgment or decree be erroneous, the error can be corrected only by a superior appellate tribunal.  The leading distinction is between judgments and decrees merely void, and such as are voidable only : the former are binding no where ; the latter every where, until reversed by a superior authority.  Upon general principles, the decree of the Washington circuit court must have the same force and effect, and none other in this court, than it would or ought to have in any circuit court of the state.  Although these principles are unquestionable, the correct application of them to this case is attended with no little difficulty.

" The suit and decree is against the unknown heirs of John Abel Hamlin.  Instead of personal service of process upon the defendants in the suit, an order of publication was made against them ; and upon a certificate of the publication

of this order for eight weeks successively in an authorised newspaper being produced and filed in the cause, the bill was taken pro confesso; and at the next succeeding term the final decree was entered, directing the conveyance of the land to the complainant.

" The counsel for the defendants in this cause have suggested several irregularities in the proceedings in that cause; and insist, the court had no legal authority to pronounce any decree therein. The complainant's counsel contend, that the proceedings were had in pursuance of the several acts of assembly concerning absent defendants: and that if any irregularities have intervened in the progress of the suit, the proceedings and decree are at most only erroneous: but that the court having jurisdiction and authority, by the laws of the state, to pronounce a decree for a conveyance of land lying within the county; the decree, however irregular it may be, is not void.

" This argument renders it necessary to examine the several acts of assembly authorising proceedings against absent defendants: for, by the general law of the land, no court is authorised to render a judgment or decree against any one or his estate, until after due notice by service of process to appear and defend. This principle is dictated by natural justice; and is only to be departed from in cases expressly warranted by law, and excepted out of the general rule.

" The first act of assembly is the act of the 19th of December 1726, copied from the pre-existing laws of Virginia. That act provides for the case where a suit in chancery is commenced ' against any defendant or defendants, who are out of this commonwealth, and others within the same having in their hands effects of, or otherwise indebted to the absent defendant.' &c. ; and the second section authorises the court, in such cases, to have publication made two months successively in an authorised newspaper, and if the absentee still fails to appear, to proceed to decree, &c. This act manifestly applies only to cases of debt or duties personal; for the satisfaction of which, the debts or effects of the absent debtor are attached, or enjoined in the hands of the resident party. The next act of assembly, in order of time, is

[Hollingsworth *vs.* Barbour and others.]

the act of the 16th of December 1802. The third section of this act provides, that ' where any person or persons, their heirs or assigns, claim land as locator, or by bond or other instrument in writing, they may institute a suit in equity, having jurisdiction in such cases; and where the party having died, and the legal title descended to his heirs, the complainant may proceed to obtain a decree for the land, though the particular names of the heirs be unknown, and not particularly named in the suit; although they may be residents of this commonwealth or not; but in such cases, it shall be advertised *eight weeks* in one of the gazettes of this state, requiring such heirs or representatives to appear and make defence.' This statute authorises the court to proceed to decree after publication, only in the cases in which the complainant claims the land sued for in his bill as *locator* only, or by *bond or other instrument in writing*.

" We must then look into the bill of Hollingsworth against the unknown heirs of John Abel Hamlin, to see if the complainant in that case claimed the land as locator, or by bond or other instrument in writing. Upon an inspection of the bill it is manifest, that the complainant in that case did not claim the land by bond or other instrument in writing. The bill does not pretend that the complainant held, or ever did hold, any instrument of writing; on the contrary, he shows, negatively, that he did not. He alleges that he made a parol agreement with Hamlin for the warrants, after the return of his attachment against Hamlin to the court in Philadelphia, in 1784; and that the warrants were afterwards delivered to him, in pursuance of that agreement, by the sheriff, who had seized them at the time he levied the attachment on some of Hamlin's effects; but that the warrants were not returned as levied on. The bill shows he did not claim as locator, in the sense of the term. The claim as locator, and the terms in which it is expressed, are peculiar terms in Kentucky. In early times, many contracts were made between warrant holders and others, by which those others agreed to locate the warrants for a portion of the land secured by location; and in many other cases, one man located the warrants of another without any special agreement as to compensation,

Vol. IV.—3 K

but with an expectation of receiving as compensation the portion of land usually given for such services. The phrase, 'claim as locator,' grew out of this state of things; and has been universally understood by the people of the country to signify the compensation of a portion of the land located agreed to be given by the owner of the warrant to the locator of it for his services. The term is believed never to have been used in any other sense, or as signifying the acquisition of property by any other species of contract, than a contract to locate for a portion of the land. According to well settled rules of construction, the language of the statute must be understood in this its popular acceptation.

" The order of publication in the case of Levi Hollingsworth, against the unknown heirs of John Abel Hamlin, was made at the November term of the Washington circuit court, in the year 1813; proof of the publication of the order, eight weeks successively in the Bardstown Repository, was made on the 4th of April 1814; and at the August term, in the year 1814, the final decree was rendered in the cause. These dates are important, because they show that the only remaining act upon which reliance was placed, and which passed on the 6th of February 1815, is subsequent to the decree, and cannot apply to the case. The acts of 1796, and of 1802, already noticed, were the only statutes existing at the time of the proceedings and decree, in the suit of Hollingsworth against the unknown heirs of John Abel Hamlin; which authorised the courts of the state to proceed upon orders of publication to decree against absent defendants.

" It appears clear to my mind, that the case was not within the provisions of either of the statutes; and that the order of publication, and the proceedings and decree thereupon, were wholly unauthorised, and unwarranted by the law of the land. The question is, is the decree therefore erroneous only, or is it simply void.

" It seems difficult to escape from the conclusion, that if the order of publication was wholly unwarranted by law, the publication is as if it had never been made. Even in cases expressly authorised by the statute, a publication is only a constructive notice to the party; but if the publication in

the particular case be unauthorised, no principle is perceived upon which it can be regarded as constructive notice.

"It is an acknowledged general principle, that judgments and decrees are binding only upon parties and privies. The reason of the rule is founded in the immutable principle of natural justice, that no man's right should be prejudiced by the judgment or decree of a court, without an opportunity of defending the right. This opportunity is afforded, or supposed in law to be afforded, by a citation or notice to appear, actually served; or constructively, by pursuing such means as the law may, in special cases, regard as equivalent to personal service. The course of proceeding in admiralty causes, and some other cases where the proceeding is strictly in rem, may be supposed to be exceptions to this rule.

They are not properly exceptions : the law regards the seizure of the thing as constructive notice to the whole world; and all persons concerned in interest are considered as affected by this constructive notice. But, if these cases do form an exception, the exception is confined to cases of the class already noticed, where the proceeding is strictly and properly in rem, and in which the thing condemned is first seized and taken into the custody of the court. The case under consideration is not properly a proceeding in rem; and a decree in chancery for the conveyance of land has never yet, within my knowledge, been held to come within the principle of proceedings in rem, so far as to dispense with the service of process on the party. There is no seizure nor taking into the custody of the court the land, so as to operate as constructive notice. Constructive notice, therefore, can only exist in the cases coming fairly within the provisions of the statutes authorising the courts to make orders of publication, and providing that the publication, when made, shall authorise the courts to decree. It has been already shown that this case is not within the provisions of any statute.

"It would seem to follow, that the court acted without authority; and that the decree is void for want of jurisdiction in the court. But if not void, as being coram non judice, it is void and wholly ineffectual to bind or prejudice the

rights of Hamlin's heirs, against whom the decree was rendered; because they had no notice, either actual or constructive.

" The principle of the rule that decrees and judgments bind only parties and privies, applies to the case: for though the unknown heirs of Hamlin are affected to be made parties in the bill, there was no service of process, nor any equivalent to bring them before the court; so as to make them, in the eye of the law and justice, parties to the suit.

" The case of Hynes vs. Oldham, 3 Monroe's Reports, was cited to prove that the proceedings in the case of Hollingsworth vs. Hamlin's Heirs, were regular; but if not so, that they were at most only erroneous and not void. The cases appear to me to be essentially different. That was a case within the jurisdiction of the statutes authorising publications: the publication had been made, and the only objection was, that it did not appear that an affidavit had been filed by the complainant that the particular names of the heirs were unknown to him before making the order of publication. It was decided that that omission might have been a cause of revision, or of reversal upon appeal to the appellate court; but that the decree was not therefore void.

" In the case under consideration, the law did not authorise publication at all. It is a case in which the court had no authority to pronounce any decree, until the party was served with process. It is not a case like the one cited, where there is an irregularity merely in the manner of issuing or awarding the notice by publication; but a case in which notice by publication is wholly unauthorised. In the case cited, the court of appeals admit that a judgment or decree rendered against a party without notice is void, and an unauthorised publication cannot be regarded as notice; and the case under consideration, is as if no attempt to give notice had been made.

" There is an obvious distinction in reason between this case and the case where there has been personal service of irregular or erroneous process. In that case the party has notice in part, and may, if he will, appear and object to or waive the irregularity; in this, the publication, being unauthorised,

[Hollingsworth *vs.* Barbour and others.]

is not even constructive notice : and unless the proceedings are considered as void, the injured party may be remediless.

" There is another ground, on which it may well be questioned, whether the complainant has made out such a case as will enable him to set up and assert the entries, survey and patent of John Abel Hamlin against the defendants. The act of assembly of 1802 authorises a decree upon an order of publication against heirs, where the particular names of the heirs are unknown. But the acts of assembly do not declare, that it shall be taken for granted that there were heirs, and that the title passed by descent to them; and by the decree and commissioners' deed should pass to the complainant, whether any such heirs existed or not. The manifest object of the statute was, to dispense with the necessity of inserting the particular names in the proceedings, and to substitute in the stead of the particular names, their characteristic description of heirs of the decedent. But it is apprehended the record of the proceedings against the unknown heirs, &c. is no evidence that any such heirs existed, and that the decree and deed, made in pursuance of it, cannot avail to pass any title to the complainant; without some evidence that John Abel Hamlin left heirs, upon whom his estate descended, and from whom it could pass by the commissioners' deed to the complainant. There is no evidence in this case, conducing in the slightest degree to show that John Abel Hamlin left any heirs capable of inheriting his estate. There is nothing for the complainant to rest upon but presumption. Although it may sometimes be presumed that a decedent left heirs rather than that he left none ; it is not clear to my mind that the presumption should be indulged in a case like this, so far as to uphold the title of the complainant. It is but a presumption of fact in any case, and like other presumptions, may be repelled by countervailing facts and presumptions.

" It appears that John Abel Hamlin was a foreigner from France, and died in the city of Philadelphia about the year 1788. The complainants' own bill against the unknown heirs of John Abel Hamlin, contains no allegations in terms that he left any heirs capable of inheriting : on the contra-

ry, it expressly alleges, that he left neither wife nor child ; and that after much inquiry, no person could be found who could give any account of his heirs. Twenty-five years intervened between the death of John A. Hamlin and the exhibition of the complainants' bill against his unknown heirs in the Washington circuit court; and although it appears that he, until his death, and the complainant resided in the city of Philadelphia, and were personally known to each other ; no heir ever appeared to claim his estate, nor did Hollingsworth ever ascertain the existence of any such heir. Nearly forty years have transpired since the death of Hamlin, and no heir has yet been heard of. Under such circumstances, if the presumption that Hamlin left heirs is not absolutely repelled, I think it so weakened, that the court ought not to rest upon it as sufficient to sustain the complainants' title against the defendants, who have the legal title, and have been long in the possession and enjoyment of it. Even the indulgence of a general presumption that Hamlin left kindred, who, if citizens of the United States or of France, could inherit his estate, would not avail the complainant, without going the full length of presuming also that such kindred were in fact citizens or Frenchmen. The presumption that Hamlin left any kindred, citizens of the United States, is strongly repelled by the statements of Hollingsworth's bill in the Washington circuit court; and by all the circumstances of the case. There is nothing to found the presumption upon, that he left heirs who were French citizens in 1788, when he died; but the circumstance that he had emigrated from Brittany about, or previous to 1779 : a circumstance too feeble to justify this court in finding the fact to be so.

"If Hamlin left kindred who were aliens, and belonging to any other nation, they could take nothing by descent, and nothing could pass from them to the complainant. The objection of the alienage of Hamlin and his heirs, regarding him and them as French citizens or subjects, has not been considered, deeming it unnecessary to express any opinion on that point. Entertaining the opinion, as the foregoing observations have shown, that the complainant has failed to show himself legally invested with the claim and

title of John Abel Hamlin, or of his heirs, if he left any, so as to enable him to set up the entries, surveys and patent, in the name of John A. Hamlin, against the legal title and long possession of the defendants; all investigation of the relative merits of the original claims is necessarily superseded."

The decree of the circuit court dismissing the bill of the complainant is affirmed, with costs.

This cause came on to be heard on the transcript of the record, from the circuit court of the United States for the district of Kentucky, and was argued by counsel; on consideration whereof, it is ordered, adjudged and decreed by this court, that the decree of the said circuit court in this cause be, and the same is hereby affirmed with costs.