In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-3020

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SAMUEL VOLPENDESTO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 08 CR 115-2 — **Ronald A. Guzmán**, *Judge.*

ARGUED DECEMBER 11, 2013 — DECIDED JUNE 6, 2014

Before WOOD, *Chief Judge,* and FLAUM and SYKES, *Circuit Judges*.

WOOD, *Chief Judge*. Samuel Volpendesto's career in organized crime finally caught up to him at the age of 87. Wheelchair-bound and in poor health, he heard the jury return guilty verdicts against him on four counts: racketeering conspiracy, conspiracy to commit arson, arson, and use of a destructive device in relation to a crime of violence. The district court sentenced Volpendesto to prison, entered a forfeiture

judgment, and ordered him to pay $547,597 in criminal restitution to the victims of his crimes.

Volpendesto appealed, but he died before we could hear his case. The difficult question we confront, which has divided our sister circuits, is whether a restitution order that is part of a criminal judgment survives when the defendant dies before his appeal can be resolved. We conclude that Volpendesto's death mooted his case and thus the criminal restitution order abates along with everything else covered by the judgment.

## I

Volpendesto was the elder statesman of an organized crime operation in West Chicago. His organization, led by Michael Sarno, made money through illegal gambling and jewelry store robberies. He was tried along with four codefendants, including his son Anthony Volpendesto, on a four-count indictment. The jury convicted him on all counts. The details of the gang's crimes are discussed in our opinion resolving the codefendants' appeals. See *United States v. Volpendesto et al.*, 746 F.3d 273 (7th Cir. 2014). Here we mention only the facts that are essential for the present appeal.

To maintain its territorial control over illegal gambling, the enterprise once detonated a bomb at a competitor's business, causing losses for the building's owner Richard Slejza and his insurer. The district court found that Volpendesto owed $46,124 to Slejza and the insurer in restitution for this crime. The enterprise's exploits also included heists from Ram Creations jewelry store in Novi, Michigan, and Lenna Jewelers in Hinsdale, Illinois. Volpendesto acted as the getaway driver for these robberies, both of which also led to

restitution orders: $256,721 for Ram Creations' owner Narender Agarwal and his insurer, and $244,752 for the owner of Lenna Jewelers, Lynne Friedman, and her insurer. These three items resulted in a total restitution obligation of $547,597, on which Volpendesto was required to make "monthly payments of a minimum of ten percent of his net monthly income as directed by the Probation Office."

In addition to the restitution order, the district court also imposed an order of forfeiture in the amount of $1,878,172 in favor of the United States. The forfeiture order authorized the United States to take over a residential property, all funds in Volpendesto's name, and any other assets that might become available in the future to satisfy the forfeiture judgment. Pursuant to 18 U.S.C. § 1963(*l*)(1), the order provided that any person (other than Volpendesto) claiming an interest in the seized property could petition the court within thirty days of notice by publication to adjudicate the validity of his or her alleged interest. Parties failing to file within thirty days were forever barred from asserting a claim. Following disposition of all alleged interests in seized property, the court's final order of forfeiture vested clear title in the government.

We severed Volpendesto's appeal from those of his codefendants upon his death and asked Volpendesto's trial attorney to represent his interests in this appeal.

## II

The government's brief opens with a challenge to our appellate jurisdiction, and so we must begin there. The government contends that neither Volpendesto's trial attorney nor Volpendesto's estate has Article III standing to bring this

appeal. It reasons that only Volpendesto himself would have had standing to challenge his criminal conviction and sentence, and he is gone. That leaves no one, the government concludes, who is entitled under Article III to pursue this appeal. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). We are entitled to resolve this question, because we always have jurisdiction to review our own jurisdiction. *Muratoski v. Holder*, 622 F.3d 824, 829 (7th Cir. 2010).

We find it peculiar to hear this argument from a party that seeks to preserve part of the district court's judgment. Congress provided an appeal of right from judgments in criminal cases. See 18 U.S.C. § 3742; 28 U.S.C. § 1291. Given that fact, we do not see how the district court could impose a restitution order that is immune from challenge by the party that would have to satisfy it. Due process demands no less. Moreover, *if* Volpendesto's obligation to make restitution can be imposed on the estate, there is no conventional problem with the estate's standing. The estate's injury (a $547,597 liability) is directly traceable to the government's conduct (obtaining the restitution order) and can be remedied by this court through an order of vacatur. See *Lujan*, 504 U.S. at 560–61. See also *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (disapproving the use of the "prudential standing" rubric and emphasizing the obligation of federal courts to hear and decide cases within their Article III jurisdiction).

A contrary ruling would be troublesome. If no one has standing to contest the order, then no one should be bound by it. See *Hollingsworth v. Barbour*, 29 U.S. 466, 475 (1830) ("It is an acknowledged general principle that judgments and decrees are binding only upon parties and privies. The rea-

son of the rule is founded in the immutable principle of natural justice, that no man's right should be prejudiced by the judgment or decree of a court, without an opportunity of defending the right.") (quotation marks omitted). And if no one is bound by the restitution order, then it does not remain in force in any meaningful way.

The question remains under what authority we may consider whether the restitution order abates on death. Courts that find restitution orders survive the defendant's death also find that the defendant's estate has standing to contest them. *E.g. United States v. Mmahat*, 106 F.3d 89, 93 (5th Cir. 1997) ("Because the restitution order survives … we grant the motion for [the defendant's] heirs to continue the appeal in his stead."), *rev'd by United States v. Estate of Parsons*, 367 F.3d 409 (5th Cir. 2004) (en banc); *United States v. Christopher*, 273 F.3d 294, 299 (3d Cir. 2001) (restitution order "survives against the estate of the deceased convict"). Courts finding that restitution orders abate allow the defendant's attorney to present the issue on appeal without involving the defendant's estate. *E.g., United States v. Rich*, 603 F.3d 722, 724 n.4 (9th Cir. 2010) ("The government implies that Rich's attorneys cannot raise this argument without substitution of the estate, but substitution is not required.").

After oral argument, the government referred us to several cases standing for the proposition that victims as "nonparties cannot directly appeal a restitution order entered against a criminal defendant." See *United States v. Fast*, 709 F.3d 712, 715 (8th Cir. 2013) (citing ten courts of appeals), *vacated and remanded on other grounds sub nom. Vicky v. Fast*, 572 U.S. ___, No. 13-69 (Apr. 28, 2014). But see *United States v. Laraneta*, 700 F.3d 983, 986 (7th Cir. 2012) (distinguishing

joinder of victims as parties in district court and victim intervention in appellate proceedings). These cases cut both ways. On the one hand, they are of limited utility here, because they involve victims. Victims lack standing because "allowing victims to appeal would erode the [restitution statute]'s attempt to preserve the [g]overnment's discretion." *Fast*, 709 F.3d at 716 (quotation marks omitted); *Laraneta*, 700 F.3d at 985–86. The government's prosecutorial discretion is not affected if the estate steps into the shoes of the deceased defendant. Rather, the estate becomes the adversarial entity from which the government seeks to compel payment on the order of restitution. See *Christopher*, 273 F.3d at 299; *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (nonparty preclusion may obtain for succeeding owners of property). On the other hand, a straightforward application of the rule that nonparties are not entitled to take a direct appeal of a restitution order suggests that the estate is barred from defending its own interests in this court.

In our view, the government is making this more complicated than it needs to be. Volpendesto's death does not make it necessary to drag the estate into this case. In this connection, it is important not to conflate two points: (1) whether the appeal is indeed moot; and (2) if yes, then what should happen to the order of restitution. The government has discussed this issue in terms of standing, but that is not accurate. As we held in *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512 (7th Cir. 2010), "[w]hen a party with standing at the inception of the litigation loses it due to intervening events, the inquiry is really one of mootness." *Id.* at 516. Volpendesto's death has deprived us of the power to decide the merits, but it does not defeat our authority to resolve the appeal in response to the mootness of the underlying case. See Charles

Alan Wright & Arthur Miller, 13C FED. PRAC. & PROC. JURIS. § 3533.10 (3d ed. 2014). For assistance in resolving that issue, we asked Volpendesto's trial attorney to file a brief discussing it. *Cf.* FED. R. APP. P. 29 (amicus briefs), 43 (substitution of parties). He has done so, and we appreciate his efforts. Having assured ourselves that we do have authority to wrap up this appeal, we now turn to the central question.

### III

The doctrine of abatement provides that "death pending direct review of a criminal conviction abates not only the appeal but also all proceedings had in the prosecution from its inception." *Durham v. United States*, 401 U.S. 481, 483 (1971); see *United States v. Moehlenkamp*, 557 F.2d 126, 128 (7th Cir. 1977). This principle applies only while appeals of right are pending; the Supreme Court draws the line at petitions for a writ of *certiorari,* which are simply dismissed upon the death of a petitioner. *Dove v. United States*, 423 U.S. 325, 325 (1976) (per curiam). As the Court wrote in *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, "vacatur must be decreed for those judgments whose review is … prevented through happenstance—that is to say, where a controversy presented for review has become moot due to circumstances unattributable to any of the parties." 513 U.S. 18, 23 (1994) (citation and quotation marks omitted.)

We and our sister circuits have recognized that death of a criminal defendant before appeal causes the case to become moot. Because mootness occurs before the conviction can finally be confirmed, "the longstanding and unanimous view of the lower federal courts [is] that the death of an appellant during the pendency of his appeal of right from a criminal conviction abates the entire course of the proceedings

brought against him." *Moehlenkamp*, 557 F.2d at 128; *United States v. Zizzo*, 120 F.3d 1338, 1346 (7th Cir. 1997) (following *Moehlenkamp*); see also *United States v. DeMichael*, 461 F.3d 414, 417 (3d Cir. 2006) (recognizing general rule of abatement but declining to apply it where defendant's appeal challenged only his fine, not his conviction; court abated the fine); *Logal,* 106 F.3d at 1551–52 (vacating conviction and restitution order in light of defendant's suicide); *United States v. Oberlin*, 718 F.2d 894, 895–96 (9th Cir. 1983) (death abates all aspects of "the prosecution *ab initio*," including forfeiture judgment).

The rationale for the abatement doctrine is that "the interests of justice ordinarily require that [a criminal defendant] not stand convicted without resolution of the merits of his appeal, which is an 'integral part of our system for finally adjudicating his guilt or innocence.'" *Moehlenkamp*, 557 F.2d at 128 (quoting *Griffin v. Illinois*, 351 U.S. 12, 18 (1956)); *Parsons*, 367 F.3d at 415 ("The primary justification for the abatement doctrine arguably is that it prevents a wrongly-accused defendant from standing convicted."). The doctrine rests on the idea "that the state should not label one as guilty until he has exhausted his opportunity to appeal." *Id.* at 413. Although the abatement rule does not have a constitutional basis, it has been adopted almost unanimously by the federal courts, and many state courts also follow it. *Id.* at 413 n.7 (citing cases from several U.S. courts of appeals); *United States v. Pauline*, 625 F.2d 684, 685 n.5 (5th Cir. 1980) (citing state cases). But see *State v. Carlin,* 249 P.3d 752, 762–63 (Alaska 2011) (recognizing that plurality of states follow abatement rule but disapproving it for Alaska); *State v. McDonald,* 424 N.W.2d 411, 413–14 (Wis. 1988) (declining abatement and allowing appeal to proceed after defendant's death).

Views among federal courts differ, however, on the question whether criminal restitution orders are subject to the rule of abatement. Compare *Parsons*, 367 F.3d at 415 (finding restitution order abates on criminal's death pending appeal); *Rich*, 603 F.3d at 729 (same); *Logal*, 106 F.3d at 1552 (same); with *Christopher*, 273 F.3d at 299 (finding restitution order does not abate); *United States v. Dudley*, 739 F.2d 175, 178 (4th Cir. 1984) (same); *United States v. Johnson*, Nos. 91-3287, 91-3382, 1991 WL 131892 at *1 (6th Cir. July 18, 1991) (unpublished) (same). Those that view restitution as an exception to the rule of abatement reason that restitution is intended to compensate victims much like a civil judgment; they do not see restitution as part of the offender's punishment. See *Christopher*, 273 F.3d at 298 ("The question whether an order of restitution should abate depends essentially on its categorization as penal or compensatory.").

The problem is that restitution is neither fish nor fowl. It is instead a "procedural innovation" that "enables the tort victim to recover his damages in a summary proceeding ancillary to a criminal prosecution." *United States v. Bach*, 172 F.3d 520, 523 (7th Cir. 1999); see also *United States v. Newman*, 144 F.3d 531, 538–39 (7th Cir. 1998) ("Restitution is not 'punishment' within the meaning of the Ex Post Facto Clause.") (quotation marks omitted). Volpendesto was subject to the provisions of the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A. That statute provides that for "a defendant convicted of an offense described in subsection (c) [which includes a crime of violence], the court shall order … in addition to or in lieu of any *other* penalty authorized by law, that the defendant make restitution to the victim of the offense." § 3663A(a)(1) (emphasis added). Restitution ordered under this authority, we believe, cannot be disentangled

from the criminal conviction that underlies the sentence. (We note that restitution may be ordered in certain civil cases, such as proceedings under a consumer-protection statute. See *Matter of Towers*, 162 F.3d 952 (7th Cir. 1998). Nothing we say here should be taken as a comment on that very different situation.)

The rule of abatement terminates criminal proceedings *ab initio*, "vacating the conviction entered against [the defendant]." *Moehlenkamp*, 557 F.2d at 128; *Logal*, 106 F.3d at 1552 ("Under the doctrine of abatement *ab initio* … the defendant stands as if he never had been indicted or convicted. The absence of a conviction precludes imposition of the restitution order against [defendant] or his estate pursuant to § 3663.") (citation and quotation marks omitted). The fact that criminal restitution serves a compensatory purpose does not enable it to be imposed in the absence of a final conviction.

The government objects that abatement of the restitution order unfairly rewards the estate at the expense of victims. See *Christopher*, 273 F.3d at 299 ("To absolve the estate from refunding the fruits of the wrongdoing would grant an undeserved windfall."). That is one way of looking at things, but it does not change the result. If we are considering practical effects, it is worth noting that most, if not all, of the assets in Volpendesto's estate were seized pursuant to the forfeiture order, which vested clear and irrevocable title in the government. See *Parsons*, 367 F.3d at 417–18 (finding restitution order abates but refusing to require government to return money paid prior to the defendant's death pursuant to forfeiture judgment). The government's seizure of Volpendesto's assets left almost nothing for either victims or the estate to recover.

Moreover, the victims are free to sue the estate. "Although it is not without a cost, requiring victims to argue their case in civil court protects the interests of defendants whose direct appeals are not yet final." *Parsons*, 367 F.3d at 416 n.17; *Logal*, 106 F.3d at 1552 ("[N]othing precludes the victims from bringing a separate civil action to prevent any improper benefit to [defendant]'s estate."). Indeed, there is nothing to prevent victims from bringing civil actions even before the trial is over, and they might wish to do so in order to avoid any possible trouble with the statute of limitations. The fact that victims lack standing to challenge restitution orders in criminal proceedings in no way undermines their right to use civil proceedings to vindicate their legal rights after the defendant's death.

## IV

We conclude that Volpendesto's death before his appeal was resolved caused his criminal conviction to abate. Without a final criminal conviction, there can be no order of restitution under 18 U.S.C. § 3556. The district court's judgment is VACATED and the case is DISMISSED as moot.

SYKES, *Circuit Judge*, concurring. As my colleagues explain, the doctrine of abatement holds that when a criminal defendant dies during the pendency of his direct appeal, the entire criminal proceeding is extinguished *ab initio*, so that in the eyes of the law, it is as if he had never been indicted or convicted. *See United States v. Moehlenkamp*, 557 F.2d 126, 127–28 (7th Cir. 1977). This judge-made rule is usually explained in terms of fairness or lack of finality or both. *See id.*; *see also United States v. Rich*, 603 F.3d 722, 729 (9th Cir. 2010); *United States v. Estate of Parsons*, 367 F.3d 409, 413–14 (5th Cir. 2004) (en banc); *United States v. Christopher*, 273 F.3d 294, 296–97 (3d Cir. 2001); *United States v. Logal*, 106 F.3d 1547, 1551–52 (11th Cir. 1997); *United States v. Dudley*, 739 F.2d 175, 176–78 (4th Cir. 1984). I question whether the reasons for the abatement rule hold up under close scrutiny. An unreviewed criminal conviction is neither suspect nor lacking in finality in any relevant sense, and I do not think it unfair to let a criminal judgment stand if the defendant dies while his appeal is pending.

But we're not asked to reconsider and abolish the abatement doctrine here. The government argues instead that restitution orders should be exempt from it. As my colleagues explain, however, "[w]ithout a final criminal conviction, there can be no order of restitution under 18 U.S.C. § 3556." Majority Op. p. 11. In an appropriate case, we should consider whether the abatement doctrine is justified or should be abrogated. Because that question has not been briefed here, I agree with my colleagues that the district court's judgment must be vacated and the case dismissed.