In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1636

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EDMUND J. BRIXEN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:17-cr-00065-wmc-1 — **William M. Conley**, *Judge.*

ARGUED OCTOBER 29, 2018 — DECIDED NOVEMBER 7, 2018

Before BAUER, EASTERBROOK, and SCUDDER, *Circuit Judges*.

BAUER, *Circuit Judge.* An individual with the Snapchat username "Snappyschrader" held himself out to be a thirty-one-year-old male and agreed to assist a 14-year-old female in purchasing undergarments. Unbeknownst to him, he was communicating with Detective Baumgarten of the City of Altoona Police Department. After agreeing to meet at a

supermarket, law enforcement officers identified "Snappy-schrader," arrested him, and seized his phone. The man they arrested was Edmund Brixen. To illustrate to Brixen that he had been communicating with an undercover detective, Baumgarten sent a message to Brixen's phone from the undercover Snapchat account and Brixen witnessed the notification appear on his phone screen. Brixen moved to suppress this evidence arguing it constituted an unreasonable search of his cell phone. The district court denied the motion on the grounds that Detective Baumgarten's actions did not constitute a search under the Fourth Amendment. Brixen timely appealed. For the reasons set forth herein, we affirm.

## I. BACKGROUND

Beginning on May 24, 2017, City of Altoona Police Detective Jeff Baumgarten posed as a fourteen-year-old female on a smartphone application called Whisper under the username "Bored_4_teen_f." Baumgarten contacted another user, "Death_Island," who represented himself as a thirty-one-year-old male and the two agreed to go shopping for "under-wear and bras." To facilitate this meeting "Death_Island" disclosed his telephone number, two photos of himself, and his Snapchat name, "Snappyschrader."

Continuing the interaction on Snapchat, "Snappyschrader" and "Bored_4_teen_f" agreed to meet at a local supermarket on June 1. "Snappyschrader" stated he would be driving a black car and suggested they meet in front of the store. Just before 1:00 p.m. "Snappyschrader" sent a Snapchat message to "Bored_4_teen_f" indicating he was on his way. A few minutes later Baumgarten observed a black car drive into the super-

market parking lot and witnessed someone exit the car who matched the identity of the individual in the two photographs sent by "Snappyschrader." This individual began walking toward the supermarket entrance while checking his phone and appeared to be scanning the front of the store as if trying to locate someone. Before he was able to enter the supermarket Baumgarten and two other officers arrested him. The individual arrested is the defendant-appellant in this case, Edmund Brixen.

The officers searched Brixen's person incident to the arrest and seized, among other things, his cell phone, which was powered on at the time. After being read his Miranda rights, Brixen agreed to speak with the officers and explained he was at the store to buy food and denied he intended to meet anyone. To illustrate that the officers knew why he was there and that he had been interacting with an undercover detective, Baumgarten used his police cell phone to send a Snapchat message to "Snappyschrader." Brixen watched the phone held by Baumgarten as a Snapchat notification appeared on the screen and indicated he had received a message from "Bored_4_teen_f." Baumgarten did not access any content within Brixen's phone, nor did he manipulate the phone in any way before he obtained a search warrant. After witnessing the notification, Brixen admitted he intended to meet a fourteen-year-old female to take her shopping for "undergarments." Brixen also indicated that he planned on providing the girl with advice and denied having nude images of underage girls on his phone.

Brixen was released from custody the next day and Baumgarten obtained a warrant to search Brixen's cell phone on

June 7. The search revealed child pornography and evidence that Brixen transported a minor across state lines to engage in criminal sexual activity. Brixen was arrested on June 9. He moved to suppress the evidence that the notification appeared on his phone when Baumgarten sent the Snapchat message. Before the district court ruled on the motion, the parties entered into a plea agreement that included a broad waiver of Brixen's appellate rights, but reserved for appeal any denial of the motion to suppress. Subsequently, the magistrate judge recommended the motion be denied because the detective's actions did not constitute a search and even if they did, suppression was not warranted because the evidence obtained did not affect the validity of the search warrant for Brixen's phone. The district court adopted this ruling and Brixen timely appealed.

## II. ANALYSIS

Brixen argues the district court erred in denying his motion to suppress the evidence that resulted from Baumgarten sending the Snapchat message to his phone and Brixen's subsequent statements. The government countered with an argument asserting that this Court does not have jurisdiction because Brixen lacks standing. The Court will discuss each issue in turn.

### A. Standing

The government challenges our appellate jurisdiction claiming Brixen lacks standing. The government contends redressability is not possible because Brixen concedes in his briefs that the warrant to search his cell phone is valid and that is the sole issue on appeal. We are obligated to assess our own

jurisdiction and we undertake this review *de novo*. *United States v. Volpendesto*, 755 F.3d 448, 450–51 (7th Cir. 2014); *Muratoski v. Holder*, 622 F.3d 824, 829 (7th Cir. 2010).

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." Const. art. III, § 2. The case-or-controversy requirement applies throughout the stages of federal judicial proceedings, both trial and appellate. *Ostby v. Manhattan Sch. Dist. No. 114*, 851 F.3d 677, 682 (7th Cir. 2017) (citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990)). To establish standing a litigant must establish it suffered an actual, concrete injury that is fairly traceable to the challenged conduct and likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, — U.S. —, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). If a federal court's decision will not affect the rights of the litigants, the aggrieved party would be unable to illustrate the redressability component of standing, rendering any judicial decision in the case an impermissible advisory opinion. *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006). The government contends this has happened in the case at hand. We disagree.

On appeal, Brixen does concede that "the evidence recovered under the subsequent search warrant remains admissible because even after excision of the tainted evidence from the supporting affidavit, it still establishes probable cause." Appellant's Opening Brief at 20. The government contends this concession renders the evidence he seeks to suppress admissible regardless of how we rule and therefore Brixen is unable to establish the redressability aspect of standing and jurisdiction

is lacking. However, Brixen does not seek to suppress the message itself. Rather, he seeks suppression of the evidence that Baumgarten sent a message that Brixen and Baumgarten witnessed immediately appear on Brixen's phone and all derivative evidence, including inculpatory statements. Accordingly, a judicial decision favorable to Brixen would mean evidence the district court found to be admissible would become inadmissible. Limiting the amount of inculpatory evidence the government can utilize clearly affects Brixen's rights. Suppression in this instance could give Brixen more leverage in renegotiating his plea deal or could result in evidence being inadmissible if the plea negotiations fall apart and the case goes to trial. Thus, redressability has been established and the Court has jurisdiction.

### B.  Motion to Suppress

Brixen argues that Baumgarten sending a message and then viewing the notification on Brixen's phone constituted an unlawful search under *Riley v. California*, 134 S. Ct. 2473, 189 L.Ed.2d 430 (2014). Brixen asserts he sought to preserve the privacy of his cell phone screen by keeping it in his pocket, therefore the police were required to obtain a warrant before searching his phone. When reviewing a district court's ruling on a motion to suppress, we review findings of fact for clear error and conclusions of law *de novo*. *United States v. Stewart*, 902 F.3d 664, 672 (7th Cir. 2018).

"[T]he ultimate touchstone of the Fourth Amendment is reasonableness." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). But when law enforcement officials search for evidence of criminal wrongdoing, reasonableness generally necessitates

obtainment of a judicial warrant. *Veronia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995). If a warrant is not obtained, a search is only reasonable if it falls within a specific exception. *Id.* Here, there is no dispute that the seizure of the cell phone incident to Brixen's arrest was lawful. What is disputed is whether Baumgarten's actions after the phone was seized constituted an unreasonable search in violation of the Fourth Amendment. Because we find Baumgarten did not search Brixen's phone, nor did Brixen have a reasonable privacy interest in the information observed by Baumgarten, we find no constitutional violation occurred.

In *Riley*, the Supreme Court held that before searching a cell phone seized incident to an arrest, law enforcement officers must generally obtain a warrant. *Id.* at 2495. *Riley* involved two separate cases, both of which concerned law enforcement officers affirmatively accessing the content of the defendants' cell phones. *Id.* In the first case, David Riley was arrested for possession of concealed and loaded firearms that the police found in his vehicle. *Id.* An officer searched Riley incident to the arrest and seized his cell phone. *Id.* The officers then accessed information within Riley's phone and discovered evidence that he was affiliated with a gang. *Id.* Additionally, around two hours after the arrest, a detective that specialized in gangs further examined the contents of the phone. *Id.* at 2481. At Riley's trial, police officers testified regarding photographs and videos that were found on the phone, and some of the photographs were also admitted into evidence. *Id.* The second case involved Brima Wurie who was arrested for participating in a drug sale when law enforcement officers seized two cell phones from his person. *Id.* After arriving at

the station, officers opened his phone, accessed its call log, and identified a phone number associated with a contact Wurie had received several calls from. *Id.* The officers used an online phone directory to trace the phone number to an apartment building where they saw Wurie's name on a mailbox and observed through a window a woman they believed was pictured on the home screen of Wurie's phone. *Id.* After securing a warrant, officers searched the apartment and seized 215 grams of crack cocaine, marijuana, drug paraphernalia, a firearm and ammunition, and cash.

The searches in *Riley* and its progeny have a common thread—they involve law enforcement officers affirmatively accessing the content within cell phones to gather evidence against arrestees. Seventh Circuit cases applying *Riley* confirm this. *See United States v. Gary*, 790 F.3d 704, 708 (7th Cir. 2018) (holding a detective's search of a cell phone to discover its number and accessing its call log to verify the phone received a call from the detective's phone number was unconstitutional under *Riley*); *United States v. Jenkins*, 850 F.3d 912, 916 (7th Cir. 2017) (the government conceded that searching through the settings to determine the phone's number and accessing its call log was unconstitutional under *Riley*). Here, Baumgarten's actions simply do not amount to a search of Brixen's cell phone. He did not open or otherwise manipulate Brixen's phone. Nor did he gain access to any of the phone's content or attempt to retrieve any information from within the phone.

Our sister circuit reached the same conclusion, albeit in an opinion that predated *Riley*. *United States v. Lawing*, 703 F.3d 229, 238 (4th Cir. 2012). In *Lawing*, law enforcement officers

pulled over an individual who fit the description of someone they believed was delivering drugs. *Id.* at 233. Unsure of whether they had pulled over the correct individual, the officers decided to call the telephone number used by their confidential informant to order the drugs. *Id.* at 233–34. After calling the number twice and witnessing Lawing's phone ring twice, the officers were satisfied he was the drug dealer. *Id.* at 234. Accordingly, the police officers then frisked and detained him and began searching his vehicle. *Id.* The court held:

> Nothing in the record supports Lawing's claim that his cell phone was the subject of a search. The police did not attempt to retrieve any information from within the phone. Instead, the officers' possession of Lawing's cell phone was limited to quickly determining whether Lawing's phone would ring when [the drug dealer's] number was dialed.

*Id.* at 238. Similarly, Baumgarten did not retrieve any information from Brixen's phone. *Riley* concerned affirmative manipulation of a cell phone in order to retrieve information from within the phone. Here, since the phone's content was not affirmatively accessed by law enforcement officers, no search occurred.

Nevertheless, Brixen argues he had a reasonable expectation of privacy in the contents of his phone screen because he attempted to preserve the notifications as private by keeping his phone in his pocket. But once he was arrested, he retained no significant Fourth Amendment interest in the privacy of his person and the search incident to arrest allowed law enforce-

ment officers to seize his cell phone. *Riley*, 134 S. Ct. at 2488 (citing *United States v. Robinson*, 414 U.S. 218, 237 (1973) (Powell J., concurring) ("I believe that an individual lawfully subjected to a custodial arrest retains no significant Fourth Amendment interest in the privacy of his person"), and *United States v. Chadwick*, 433 U.S. 1, 16 n. 10 (noting that searches of a person incident to arrest are justified in part by "reduced expectations of privacy caused by the arrest")). Upon arrest, Brixen no longer had a right to keep his phone in his pocket and once the phone was seized the notification projected on the screen was plain to see, just as a ringtone would have been plain to hear. And just as an individual who fails to conceal a phone's ring from those in earshot does not have a reasonable expectation of privacy, an individual who allows notifications to appear to those in plain sight does not have a reasonable expectation of privacy.

It is clear from *Riley* that law enforcement officers cannot affirmatively access an arrestee's cell phone. Thus, disabling notifications that automatically appear on the phone would have preserved the message as private. Brixen simply had no reasonable expectation of privacy in a conspicuous notification once his phone was seized. The diminished privacy interests Brixen had as an arrestee make this conclusion even more inevitable.

### III.  CONCLUSION

We conclude that the actions taken by Detective Baumgarten did not violate the Fourth Amendment. He did not affirmatively access any information on the phone and only witnessed what was in plain view. Additionally, Brixen did not

have a reasonable expectation of privacy in the conspicuous notifications that appeared on his phone after it was seized incident to arrest. For the foregoing reasons, the judgment of the district court is AFFIRMED.