People v Cruciani (2025 NY Slip Op 02735)

People v Cruciani

2025 NY Slip Op 02735

Decided on May 06, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 06, 2025

Before: Renwick, P.J., Kapnick, Shulman, Rodriguez, Rosado, JJ. 

Ind No. 1734/18, 1216/20|Appeal No. 4054-4055|Case No. 2023-01371, 2023-04545|

[*1]The People of the State of New York, Appellant,
v
Ricardo Cruciani, Defendant-Respondent, Center for Appellate Litigation, Amicus Curiae.
The People of the State of New York, Appellant,
v
Jessie Nowell, Defendant-Respondent,the Center for Appellate Litigation, Amicus Curiae.

Alvin L. Bragg, Jr., District Attorney, New York (Dana Poole of counsel), for appellant.
Jenay Nurse Guilford, Center for Appellate Litigation, New York (Matthew Bova of counsel), amicus curiae.

Order, Supreme Court, New York County (Michele Rodney, J.), entered on or about February 1, 2023, which vacated the conviction and dismissed the indictment against defendant Ricardo Cruciani, upon his death and pursuant to CPL 210.20(1)(h); and order, Supreme Court, New York County (Althea E.M. Drysdale, J.), entered on or about August 8, 2023, which vacated the conviction and dismissed the indictment against defendant Jessie Nowell, upon his death and pursuant to CPL 210.20(1)(h), unanimously affirmed.
In these consolidated cases (People v Ricardo Cruciani and People v Jessie Nowell), the People, as the appellant, raise similar questions: Whether we should decline to follow, in the particular circumstances of each case, the common-law doctrine of abatement ab initio, which was first pronounced by the Court of Appeals in People v Mintz (20 NY2d 770 [1967]). The abatement ab initio doctrine seeks to protect a defendant's constitutional due process rights that are afforded by appellate review of a conviction (see People v Matteson, 75 NY2d 745, 747 [1989]). Under this doctrine, the death of a defendant whose conviction has not become final through the appellate process results in the abatement of not only any pending appeal but also all proceedings from the case's inception. In Cruciani, defendant's conviction resulted from a jury verdict, but he died before sentencing. In Nowell, defendant's conviction resulted from a guilty plea, but he died before sentencing. In each case, the trial court granted defense counsel's motion to vacate the conviction and dismiss the indictment pursuant to the abatement ab initio doctrine.
Factual and Procedural Background
People v Cruciani
In May 2018, defendant was indicted for several charges that included predatory sexual assault (two counts) and attempted first-degree rape, first-degree sexual abuse (three counts), third-degree rape (two counts), third-degree criminal sexual act (seven counts), and fourth-degree aggravated sexual abuse. The charges stemmed from defendant's work as a pain management doctor. Defendant was well-known in his field for treating rare conditions and severe pain.
Defendant went to trial, where the only witnesses were six women, all of whom were defendant's patients and the victims of his sexual abuse. They testified that they kept him as their doctor because he was able to treat their overwhelming pain when other doctors could not. The women endured his sexual abuse because they had become reliant on, and often addicted to, the pain medications he had prescribed, often in much higher doses than other doctors would prescribe.
According to the victims, defendant's violative behavior generally began with mild indiscretions before progressing into sexual assaults. After having personal conversations with these patients, defendant eventually became physically inappropriate including by forcible sexual touching, fellatio, and sexual intercourse. Only after his sex act would defendant [*2]provide the patient with her prescription.
On July 29, 2022, the jury acquitted defendant of one of the first-degree sexual abuse counts and the fourth-degree aggravated sexual abuse count but convicted him of the remaining 12 counts. Sentencing was calendared for September 14, 2022. On August 15, 2022, however, defendant died by suicide at Rikers. Defense counsel then moved to vacate defendant's conviction and dismiss the indictment on the ground that the entire criminal prosecution had abated by reason of death. The People opposed abatement. They argued that the "inflexible application of the abatement ab initio doctrine pays insufficient heed to the growing appreciation for the rights and interests of crime victims," noting that many courts no longer apply that doctrine.
The court granted the People's request to allow defendant's victims to proceed with their impact statements. All six victims spoke of the devastating, ongoing impact that defendant's crimes had had on their lives. Several victims noted that abatement would force defendant's many victims to prove his guilt in subsequent civil trials and relive their trauma in other court cases. One of the victims urged that abatement would essentially tell the jurors that their verdict "means nothing"; another begged the court not to allow this abatement and to allow the victims to "have some form of justice"; and another stated that she needed the closure of a guilty verdict.
In a written decision, the court granted the motion, vacated the conviction and dismissed the indictment pursuant to the abatement ab initio doctrine. In its decision, the court expressed strong reservations about the doctrine.
People v Nowell
In September 2020, Jessie Nowell was indicted on the charges of Predatory Sexual Assault against a child and first-degree course of sexual conduct against a child. The charges stemmed from defendant's sexual abuse of his future wife's daughter. The sexual abuse began when the child was eight years old. In 2014, defendant moved in with his fiancÉe and her two daughters. At around the time that the victim's mother became pregnant with defendant's child, in late 2014 or early 2015, defendant began sexually abusing his fiancÉe's 8-year-old daughter. The abuse, which progressed from improper touching to him asking her to perform oral sex on him, ended in 2016.
After jury selection and before opening statements, on August 29, 2022, defendant pleaded guilty to first-degree course of sexual conduct against a child and waived his right to appeal in exchange for a 13-year prison sentence. During the plea proceedings, defendant admitted that during the period between December 15, 2014 and December 25, 2016, he engaged in at least two acts of sexual conduct, including at least one act of sexual intercourse or oral sexual conduct, with his stepdaughter, who was less than 13 years old at that time.
On December 8, 2022, defendant did not appear for sentencing. The court adjourned the [*3]sentencing to December 22, 2022. On that date, defense counsel informed the court that defendant was deceased. According to the death certificate, defendant died that morning by hanging himself in his home. Defense counsel sought abatement ab initio. The People filed a motion in opposition. By a written decision, the court granted the defense motion for abatement ab initio. In its decision, the court expressed strong reservations about the continuing validity of the abatement ab initio doctrine.
Discussion
The abatement doctrine represents a longstanding practice in New York. As indicated, the doctrine of abatement ab initio was first pronounced by the Court of Appeals over five decades ago in People v Mintz. The doctrine provides that death of a criminal defendant following a conviction, but before an appellate process is completed, requires abatement. The effect of abatement ab initio is to dismiss the appeal as moot, overturn the conviction, and dismiss the indictment. Since its pronouncement in Mintz, the Court of Appeals has consistently enforced the abatement ab initio doctrine (see e.g. People v Sullivan, 40 NY3d 1044 [2023]; People v Bryant, 38 NY3d 1158 [2022]; People v Mason, 29 NY3d 972 [2017]; People v Heatley, 25 NY3d 933 [2015]; People v Ingram, 24 NY3d 1201 [2015]; People v Matteson, 75 NY2d 745, 747 [1989]). Indeed, the Court of Appeal's articulation of the abatement ab initio doctrine aligns with federal case law, which also applies abatement ab initio when a defendant dies after conviction while his appeal is pending (see e.g. United States v Reynolds, 98 F4th 62 [1st Cir 2024]; United States v Brooks, 872 F3d 78 [2d Cir 2017], cert denied 586 US 824 [2018]; United States v Libous, 858 F3d 64 [2d Cir 2017]; United States v Volpendesto, 755 F3d 448, 452 [7th Cir 2014]).
The Court of Appeals has explained that the application of the abatement ab initio doctrine primarily addresses due process - that is, the validity of convictions that have not been afforded appellate review (Matteson, 75 NY2d at 747 ["The death places a defendant beyond the court's power to enforce or reverse the judgment of conviction, thereby preventing effective appellate review of the validity of the conviction"]; Mintz, 20 NY2d at 774 ["[S]ince [the appeal] cannot be heard, it can never be determined whether the judgment of conviction would stand, and this requires that the judgment of conviction be vacated"]).
A similar concern appears to motivate abatement ab initio in the federal courts. For instance, in United States v Libous the Second Circuit held: "[T]he interests of justice ordinarily require that a defendant not stand convicted without resolution of the merits of an appeal"(858 F3d at 66 [internal quotation marks omitted], quoting United States v Wright, 160 F3d 905, 908 [2d Cir 1998]). This rationale, which the Second Circuit has labeled the "finality rationale," is "grounded in procedural due process concerns" (id.; accord Volpendesto, 755 F3d [*4]at 453 ["[T]he state should not label one as guilty until he has exhausted his opportunity to appeal" (internal quotation marks omitted)]; United States v Logal, 106 F3d 1547, 1552 [11th Cir 1997], cert denied 522 US 953 [1997] ["[A] fundamental principle of our jurisprudence from which the abatement ab initio principle is derived is that a criminal conviction is not final until resolution of the defendant's appeal as a matter of right"]; United States v Pauline, 625 F2d 684, 685 [5th Cir 1980] ["[W]hen . . . death has deprived the accused of his right to our decision, the interests of justice ordinarily require that he not stand convicted without resolution of the merits of his appeal, which is an integral part of our system for finally adjudicating his guilt or innocence"] [internal quotation marks, alterations, and citation omitted]).
"The People bring [these] appeal[s] to urge this Court to reject the inflexible and far-reaching application of the doctrine of abatement ab initio in [Cruciani and Nowell]." Essentially, the People argue, the legal landscape is different today than it was in 1967 when the Court of Appeals originally adopted the abatement ab initio doctrine, as "significant changes in the law have removed any justification for its inflexible application . . . . " Specifically, the People argue, "a large majority of states have rejected abatement ab initio" based on the "new appreciation and understanding of the rights of the victims and the unique harms they face when they have participated in often times painful trials only to see a hard won conviction overturned, not because of any error in the criminal proceeding, but simply as a matter of routine procedure [cited quotation omitted]"(see also People v Nowell, 80 Misc 3d 689, 695 n3 [Sup Ct, NY County 2023] [listing states and cases]). Thus, the People argue, the original rationales for the abatement ab initio rule — namely, "punishment" and "finality"- are flawed because they failed to consider the victims' rights.
In opposition, amicus curiae argues that neither the People's policy arguments nor the trending approaches of other states would permit this Court to overrule the trial court's orders vacating defendants' convictions and dismissing the indictments. Amicus curiae notes that as an intermediate appellate court, "this Court lacks the power to overrule the Court of Appeals." Moreover, amicus curiae argues, "[t]his Court should reject the [People's] attempt to invent a new exception to the [abatement ab initio] rule that appears to be based on a subjective, ad hoc assessment of whether abatement seems appropriate on the particular facts of this case."
We acknowledge the various policy arguments made by the People, including that the legal landscape is different today than it was in 1967 when the Court of Appeals originally adopted the abatement ab initio doctrine, and that there has been an increased recognition of a victim's rights as part of the criminal justice process[*5]. Nonetheless, as an intermediate appellate court, we cannot overrule the Court of Appeals' decisions in People v Mintz and its progeny, as the amicus curiae correctly points out. The answer to the question of where to draw the line in striking the proper balance between the rights of defendants and the rights of victims must come not from this Court, but from the legislature or the Court of Appeals. We are thus obligated to affirm the trial judges' orders in Cruciani and Nowell vacating their convictions and dismissing the indictments based on Court of Appeals controlling precedent.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 6, 2025